OFFICE OF DISCIPLINARY COUNSEL *v.* YAJKO.

[Cite as *Disciplinary Counsel v. Yajko* (1997), 77 Ohio St.3d 385.]

(No. 96–524—Submitted September 25, 1996—Decided February 5, 1997.)

*Geoffrey Stern,* Disciplinary Counsel, and *Stacy M. Solochek,* Assistant Disciplinary Counsel, for relator.

*Chester, Willcox & Saxbe, J. Craig Wright* and *Donald C. Brey,* for respondent.

LUNDBERG STRATTON, J.   Respondent apparently has served his local community well;  he has a family and apparently is remorseful of his theft of funds.   He is to be commended for all the hours he contributed to improving the local school district situation.   However, this does not erase the fact that he committed thefts against his former employer, Aronson.   His conduct exhibited a pattern and practice of theft over a prolonged period.   This pattern of conduct, along with the

fact that respondent used his position as an attorney to steal the funds, makes respondent's wrongdoings particularly egregious.

Respondent emphasizes the fact that he voluntarily came to the Disciplinary Counsel and confessed his thefts. After further examination, it is apparent that respondent did not "voluntarily" admit to his thefts until Aronson, apparently after instituting a new accounting system, discovered financial problems with respondent's cases. Had respondent not come forward, Aronson obviously would have. This reduces the voluntary nature of respondent's "confession." Respondent is fortunate to have escaped a felony charge.

Respondent claims that his family was "barely getting by" and there was "almost no room to cut." From our examination of respondent's statement in mitigation, his claims seem to contradict that bleak financial picture presented by respondent, or else portray financial irresponsibility. Either way, neither excuse provides any justification for respondent's thefts.

Respondent owned a boat which sank. He incurred cost of a replacement and increased insurance costs. This court makes absolutely no judgment on how respondent may spend his money. However, when respondent represents to this court that "there's almost no room to cut," it is perplexing to this court why respondent continued to maintain his boat especially in light of the replacement expense and increased insurance costs. This does not appear to be the action of a family that is "barely getting by" and certainly does not carry weight as mitigation. Further, respondent's salary was $40,000 to $44,000. While not excessive, it certainly is not meager.

Finally, with regard to respondent's battered-spouse-syndrome analogy to his continued employment with Aronson, despite Aronson's alleged poor treatment of him, this court does not find any support for such a theory in this context. Further, even accepting the viability of such a theory, the evidence does not support such a novel proposition. Respondent's salary history shows relatively significant increases over the last three years of his employment with Aronson. By his own admission, respondent's salary in 1994 was $40,000 to $44,000; in 1993, $36,000; in 1992, $32,000. At minimum, that is at least a twenty-five percent raise over a two-year period.

In *Disciplinary Counsel v. Crowley* (1994), 69 Ohio St.3d 554, 556, 634 N.E.2d 1008, 1009, this court stated:

" '[T]he calculated, deliberate manner in which Respondent conducted and concealed his fraudulent schemes, his gross abuse of a position of trust and responsibility for personal gain, the amount of the theft, the length of time over which the thefts occurred and a concern that Respondent's testimony offered in mitigation and justification of the thefts * * * demonstrated a fundamental lack of appreciation for lawyers' ethical obligations to the profession and the public.' "

In the case at bar, respondent also instituted a deliberate scheme to defraud his employer over a period of years. Further, respondent's mitigation claims for the most part are unpersuasive. Moreover, and perhaps most important, two of the incidents that respondent cited as precipitating his financial crisis, the expenses for the boat (May 1988) and his wife's surgery (1991) occurred *subsequent* to his initial misappropriation in January 1988. This raises serious credibility issues pertaining to respondent's mitigation claims.

The relator recommended that respondent be suspended from the practice of law for a period of two years. However, the board determined that an indefinite suspension from the practice of law was a more appropriate sanction.

Respondent committed theft, plain and simple. Further, the thefts were committed over a period of years, indicating that respondent had developed a pattern and practice of deception. Respondent also claims that his clients were not injured by the thefts. However, respondent fails to consider the embarrassment and concern that the clients endured when they were accused of not properly paying their fees. Finally, respondent's mitigation statement lacks credibility. While the respondent is to be commended for his many hours of community service, that is not sufficient to mitigate against the violation committed. Perhaps the board summed it up best in its findings of fact when it stated:

"[I]t should matter little whether the theft or misappropriation is from an attorney's partners, associates, clients, family or friends, or whether the thefts were committed brazenly or deceptively, or whether tens of thousands of dollars or a relatively small amount was misappropriated."

Respondent's violations of DR 1–102(A)(4) and 1–102(A)(6) were stipulated. Having reviewed the record, we concur in the board's recommended sanction. Respondent is therefore suspended from the practice of law in Ohio indefinitely. Costs taxed to the respondent.

*Judgment accordingly.*

MOYER, C.J., and RESNICK, J., concur.

COOK, J., concurs in judgment only.

DOUGLAS, J., dissents.

F.E. SWEENEY and PFEIFER, JJ., dissent and would order a two-year suspension.