CLEVELAND BAR ASSOCIATION *v.* MCMAHON.

[Cite as *Cleveland Bar Assn. v. McMahon,*
114 Ohio St.3d 331, 2007-Ohio-3673.]

(No. 2006–2260—Submitted March 14, 2007—Decided July 25, 2007.)

**Per Curiam.**

{¶ 1} This court admitted respondent, Carl G. McMahon of Bay Village, Ohio, Attorney Registration No. 0001304, to the practice of law in Ohio in 1975.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent's license to practice for six months and conditionally stay the suspension based on findings that he fabricated information in correspondence to an insurance company while representing a client in a personal-injury claim. Respondent objects to the recommended sanction, argu-

ing that a public reprimand is appropriate based on mitigating factors and precedent. On review, we agree that respondent violated the Code of Professional Responsibility as found by the board, and we overrule his objections as to the recommended sanction. Moreover, because respondent intentionally invented evidence to deceive an adversary, we hold that the recommended six-month stayed suspension is too lenient and order respondent to serve a six-month actual suspension from the practice of law.

{¶ 3} Relator, Cleveland Bar Association, charged respondent with, among other misconduct not found by the board, violations of DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 7–102(A)(5) (prohibiting a lawyer from knowingly making a false statement of fact), and 7–102(A)(8) (prohibiting a lawyer from engaging in other illegal conduct or conduct contrary to a Disciplinary Rule). Respondent admitted these violations. A three-member panel of the board heard the cause, found the cited misconduct, and recommended a public reprimand. The board found only the violations of DR 1–102(A)(4) and 7–102(A)(5), dismissing the DR 7–102(A)(8) violation as redundant, and recommended the six-month suspension and that the suspension be stayed on the condition that respondent commit no further misconduct.

## Misconduct

{¶ 4} Respondent has practiced law for over 30 years, primarily in civil cases, and has represented over 3,000 clients, many in personal-injury claims. The charges of misconduct arose out of a personal-injury case in which respondent represented a passenger who had sustained minor injuries in a two-car accident. The accident took place on July 1, 2004, in Shaker Heights, Ohio, when Jerri Marrs, the driver of the second car, collided with the car in which respondent's client was riding. Police cited Marrs for improperly changing lanes.

{¶ 5} Respondent insisted that the accident was Marrs's fault, but State Auto Mutual Insurance Company ("State Auto"), Marrs's insurer, initially disputed liability. To persuade State Auto to enter into settlement negotiations, respondent sent a letter to the insurance carrier on August 20, 2004. That letter is at the heart of the charges against respondent.

{¶ 6} In the August 20 letter, respondent fabricated testimony that he identified as being verbatim from a nonexistent transcript ostensibly from a "Shaker Heights Court—July, 2004" proceeding. Respondent represented that this colloquy had occurred:

{¶ 7} "Judge: Ms. Jerri Lynn Marrs—How do you plead on the charge of improper lane change at Fairmont Circle in Shaker Heights, Ohio?

{¶ 8} "Ms. Marrs: No contest, your Honor.

{¶ 9} "Judge: Do you have any thing to say in your defense?

{¶ 10} "Ms. Marrs: I was unfortunately in the wrong lane for proceeding straight in the intersection and by mistake, hit the other car in its lane.

{¶ 11} "Judge: I assume that since you are not contesting the traffic charge that you were at fault for this accident?

{¶ 12} "Ms. Marrs: Yes, your Honor. The accident was my fault.

{¶ 13} "Judge: Then I find you guilty on the charge of improper lane change, causing an accident, and you are fined $100.00, plus court costs.

{¶ 14} "Ms. Marrs: I'm sorry for causing this accident, your Honor, but I have auto insurance to pay for the other car's damages and their injuries.

{¶ 15} "Judge: Please drive more carefully in the future, Ms. Marrs.

{¶ 16} "Ms. Marrs: Yes, your Honor."

{¶ 17} Respondent's letter to State Auto concluded:

{¶ 18} "Based upon Ms. Marrs court appearance where the Court officially found her guilty of the traffic charge, Ms. Marrs is solely liable for causing this accident. Once I obtain all of [respondent's client's] medical records and expenses, these documents will be forwarded to you for the purpose of your settling this liability case."

{¶ 19} In fact, Marrs had failed to appear in court to answer to the charge of improperly changing lanes, she had never admitted fault on the record, and she had never been "officially found * * * guilty" of this traffic offense. Respondent's August 20 letter thus contained demonstrably false information about Marrs and, by implication, about whether State Auto had any responsibility to indemnify those injured in the July 2004 auto accident.

{¶ 20} In a September 21, 2004 letter, a State Auto claims representative informed respondent that Marrs had not appeared in court and that State Auto still denied liability. On October 12, 2004, respondent replied, acknowledging that court records confirmed Marrs's failure to appear, adding that "the court has issued a warrant for her arrest for failing to appear in court." He also continued to aggressively assert Marrs's responsibility for the collision, promising State Auto that he would conduct depositions of its insured, even "in her cell."

{¶ 21} State Auto ultimately settled with respondent's client in June 2005 for $8,500. In the course of settlement negotiations, respondent wrote to the claims representative on June 20, 2005, and vaguely apologized for remarks made in his August 20 and October 12 letters. State Auto apparently never relied on the false information that respondent had provided initially.

{¶ 22} Respondent has no reliable explanation for why he fabricated facts in his August 20 letter. During relator's investigation, he stated that he may have

simply assumed that Marrs had appeared in court, as usually occurs after a traffic citation, and that she had been found guilty. And at the panel hearing, respondent claimed that he actually did not recall composing and sending the August 20 letter and that he had been "stunned" when confronted with his misstatements. He also suggested that he might have been trying to figuratively depict the likely outcome of Marrs's traffic citation. In the end, however, he described the correspondence as "senseless" and basically inexplicable.

{¶ 23} Respondent admits that he knowingly made a false statement of fact and acted dishonestly in fabricating information for the August 20 letter to State Auto. We therefore adopt the board's findings that he violated DR 1–102(A)(4) and 7–102(A)(5).

## Sanction

{¶ 24} When imposing sanctions for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, and sanctions imposed in similar cases. *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 318, 720 N.E.2d 525. See, also, *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993.

{¶ 25} Respondent flagrantly violated his duty to the legal system by attempting to advance his client's interests with evidence that he knowingly fabricated. And though State Auto employees discovered the fabrication before relying on it to the insurance carrier's detriment, respondent also breached his duty to the general public by failing to exhibit the highest standards of honesty and integrity. Respondent claims that a public reprimand is enough to deter and protect the public from such ethical lapses. We disagree.

{¶ 26} Respondent has enjoyed a long legal career with no previous disciplinary measures, his misconduct did not cause financial loss, he cooperated in the disciplinary process, he has apologized and accepted responsibility for his misdeeds, which occurred during a particularly stressful period, and he has established his excellent character and reputation apart from this one isolated incident of wrongdoing. See BCGD Proc.Reg. 10(B)(2)(a), (c), (d), (e). We relied on these same mitigating factors, to varying degrees, in *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 15; *Disciplinary Counsel v. Cuckler*, 101 Ohio St.3d 318, 2004-Ohio-784, 804 N.E.2d 966, ¶ 7; and *Disciplinary Counsel v. Eisenberg* (1998), 81 Ohio St.3d 295, 296, 690 N.E.2d 1282, all cited by respondent, in deciding to publicly reprimand lawyers for their violations of

DR 1–102(A)(4), rather than impose the actual suspensions that dishonest conduct generally requires. *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, syllabus. In none of these cases, however, did the lawyers as deliberately exceed the bounds of our standard for truthfulness as has respondent.

{¶ 27} Here, respondent unabashedly invented text of a purported transcript, complete with an adverse party's admission of fault, and forwarded the text as a quotation to the claims representative at State Auto. The claims representative contradicted respondent's misstatements, but in his return correspondence three weeks later, we see none of the "stunned" sheepishness with which respondent supposedly reacted. To the contrary, respondent essentially ignored the gaffe and continued to press his client's case.

{¶ 28} We find respondent's fabrication a "deliberate effort to deceive" that distinguishes his case from those involving inadvertence or haphazard corner-cutting. *Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 13. Indeed, for the audacity of respondent's ethical violations, the general rule requiring an actual suspension from the practice of law must apply. See *Cincinnati Bar Assn. v. Florez*, 98 Ohio St.3d 448, 2003-Ohio-1730, 786 N.E.2d 875 (lawyer suspended from the practice of law for six months because he failed to file a tax form for his client and then fabricated evidence during the disciplinary investigation to cover up the misconduct).

{¶ 29} Lawyers who choose to engage in fabrication of evidence, deceit, misrepresentation of facts, and distortion of truth do so at their peril. They are admonished that the practice of law is not a right, and our code of professional responsibility demands far more of those in our profession. Here, respondent has presented much evidence in mitigation, but an actual suspension is appropriate for this conduct.

{¶ 30} Respondent is therefore suspended from the practice of law in Ohio for six months. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

PFEIFER and O'DONNELL, JJ., dissent and would impose a six-month stayed suspension.

---

Thompson Hine L.L.P., Jennifer S. Roach, and Samer M. Musallam, for relator.

Thomas Repicky, for respondent.