CINCINNATI BAR ASSOCIATION *v.* SCHWIETERMAN.

[Cite as *Cincinnati Bar Assn. v. Schwieterman,*
115 Ohio St.3d 1, 2007-Ohio-4266.]

(No. 2006–2306—Submitted May 2, 2007—Decided August 29, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Robert C. Schwieterman of West Chester, Ohio, Attorney Registration No. 0061353, was admitted to the Ohio bar in 1993. On November 8, 2004, we imposed an interim suspension of respondent's license to practice law under Gov.Bar R. V(5) after we received notice that he had been convicted of a felony. *In re Schwieterman,* 103 Ohio St.3d 1522, 2004-Ohio-5853, 817 N.E.2d 405.

{¶ 2} On January 30, 2006, relator, Cincinnati Bar Association, filed a second amended complaint charging respondent with several violations of the Code of Professional Responsibility. Respondent stipulated to the violations of the Disciplinary Rules in each count. A panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in May 2006. Based on the stipulated facts and misconduct and other evidence, the panel made findings of fact, conclusions of law, and a recommendation, which the board adopted.

### Stipulated Facts

{¶ 3} Respondent was employed as an associate attorney at the Phillips Law Firm from March 24, 2003, until November 14, 2003. Respondent failed to register with the Supreme Court of Ohio for the biennium that began on September 1, 2003. On December 5, 2003, respondent was sanctioned $250 for failing to comply with the continuing-legal-education requirements of Gov.Bar R. X. Respondent failed to pay that sanction.

### Lucas Grievance

{¶ 4} In April 2003, respondent received a $1,000 retainer from Donald Lucas in a child-custody matter. Respondent did not deposit the retainer in the Phillips

Law Firm trust account. When the Phillips firm sent invoices to Lucas indicating that the retainer had not been paid, respondent told Lucas not to pay the bill and not to be concerned.

{¶ 5} In the summer of 2003, respondent requested and received another $500 from Lucas in the form of a check made out to the Phillips Law Firm. Respondent did not deposit the check in the firm's trust account and never cashed the check. Lucas requested a refund, but respondent's $1,500 personal check to Lucas was twice returned for insufficient funds. Lucas eventually received his refund, including a return of the uncashed $500 check.

{¶ 6} Respondent additionally arranged for several continuances in Lucas's case without Lucas's knowledge. Rather, respondent told Lucas that the opposing party had requested the continuances.

### Butts Grievance

{¶ 7} In June 2003, respondent represented Brantford Butts in a breach-of-contract action. Respondent requested and received a $2,000 retainer from Butts. However, respondent failed to deposit the funds in the Phillips Law Firm trust account and, instead, converted the money to his own use. When John Phillips of the Phillips Law Firm learned from Butts of this discrepancy, respondent told Phillips that he had never received money from Butts. After respondent's deception was uncovered, he returned the money to Butts.

### Schaaf Grievance

{¶ 8} Respondent agreed to draft a will for Becky Schaaf and charged her $450. Respondent received the $450 from Schaaf but failed to deposit the fee in the Phillips Law Firm trust account and converted the funds to his own use.

### Filing–Fee Grievance

{¶ 9} In September 2003, respondent paid a client's filing fee with a personal check. That same day, the Phillips Law Firm reimbursed respondent for the amount of the filing fee. In October 2003, the clerk of courts refunded the client's court costs by issuing a $283 check payable to respondent. Respondent did not forward the refund to his client but converted the funds to his own use.

### Duritsch Grievance

{¶ 10} In the fall of 2003, respondent represented Tonya Duritsch in a divorce proceeding. The trial court ordered that the final decree be entered on October 10, 2003. Respondent failed to submit the decree by that date and was notified by the court that the case would be dismissed if the final decree was not submitted by October 17, 2003. When respondent again missed the court's deadline, the court dismissed the divorce action for failure to prosecute.

### Brock Grievance

{¶ 11} In 2003, respondent was retained to defend Ewell and Laura Brock in a lawsuit. Respondent did not notify the Brocks that he had left the Phillips Law Firm in November 2003. Respondent also failed to inform the Brocks that he would be out of the state and unavailable for 30 days, from mid-December 2003 to mid-January 2004.

{¶ 12} By May 2004, the Brocks had become concerned about respondent's handling of their case. They eventually retained substitute counsel. Substitute counsel discovered that respondent had failed to answer the complaint and that a default judgment had been entered against the Brocks. Substitute counsel was, however, able to obtain relief from the default judgment.

### Lahni Grievance

{¶ 13} In November 2003, respondent received a $300 retainer from John Lahni in a child-custody matter. Respondent failed to deposit the retainer in the Phillips Law Firm trust account and converted the funds to his own use.

### Stepanic Grievance

{¶ 14} Respondent represented Cindy Stepanic in a criminal matter. Respondent received $2,000 from Stepanic but failed to turn over the fee to the Phillips Law Firm and converted the money to his own use.

### Moore Grievance

{¶ 15} Respondent represented Sheri Moore in a criminal matter and received a $525 retainer. Respondent failed to deposit the retainer in the Phillips Law Firm trust account and converted the funds to his own use.

### Mei Grievance

{¶ 16} Respondent represented Qing S. Mei in a family-law matter and received $875 for his services. Respondent failed to turn over this payment to the Phillips firm and converted the funds to his own use.

### OLAP Intervention

{¶ 17} Respondent was notified in early December 2003 that John Phillips had filed a grievance against him. After an intervention by the Ohio Lawyers Assistance Program ("OLAP") on December 13, 2003, respondent entered a 30–day inpatient program at the Menninger Clinic in Houston, Texas. While at Menninger, respondent was diagnosed with and treated for attention deficit hyperactive disorder and was also diagnosed with and counseled for depression.

### Criminal Charges

{¶ 18} On March 15, 2004, a Hamilton County grand jury indicted respondent on eight counts of theft from the Phillips Law Firm. On September 20, 2004, respondent pleaded guilty to one count of fifth-degree felony theft, and the other counts were dismissed. Respondent was sentenced to five years of community control and was ordered to make restitution of $9,400 to the Phillips Law Firm. Respondent subsequently made restitution.

### Flottman Grievance

{¶ 19} In July 2004, Edward Flottman and his wife paid respondent $1,500 to prepare a living trust and to assist in the transfer of assets to the trust. Respondent prepared the documents, including a deed to transfer the Flottman residence to the trust. Respondent, however, failed to record the deed transferring the residence. Between July and late November 2004, Flottman made several attempts to contact respondent about the status of the deed, but respondent did not reply. Flottman eventually talked with respondent in late November, and respondent said that he would file the deed promptly. However, respondent did not record the deed until he was informed of the Flottman grievance sometime after January 12, 2005.

{¶ 20} In addition, respondent failed to inform Flottman that he had been suspended from the practice of law, despite this court's November 8, 2004 order requiring him to notify all clients of his interim suspension within 30 days.

### Stipulated Misconduct

{¶ 21} Respondent admitted and the board found that respondent had violated DR 1–102(A)(3) (engaging in conduct involving moral turpitude), 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 9–102(A) (failing to deposit client funds into separate and identifiable bank accounts), 9–102(B)(3) (failing to maintain complete records of client funds), 6–101(A)(3) (neglecting an entrusted legal matter), 7–101(A)(1) (intentionally failing to seek the client's lawful objectives), 7–101(A)(2) (intentionally failing to carry out an employment contract), and 7–101(A)(3) (intentionally prejudicing or damaging a client during the professional relationship), and Gov.Bar R. V(8)(E)(1)(a) (failing to notify clients in pending matters of suspension from practice of law).

### Recommended Sanction

{¶ 22} In recommending a sanction, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 23} As aggravating factors, the board found that respondent's conversions and thefts showed a dishonest or selfish motive. BCGD Proc.Reg. 10(B)(1)(b). In addition, the number of violations showed a pattern of misconduct involving multiple offenses and clients. BCGD Proc.Reg. 10(B)(1)(d). The board also found that respondent had not yet fully appreciated the wrongful nature of his own misconduct. BCGD Proc.Reg. 10(B)(1)(g).

{¶ 24} In mitigation, the board noted that respondent had admitted his misconduct, had apologized, and was genuinely remorseful for his actions. Respondent also fully cooperated at every level of the disciplinary investigations. BCGD Proc.Reg. 10(B)(2)(d). Respondent has also made full restitution.

{¶ 25} Respondent offered evidence that he suffered from a mental illness. Respondent submitted reports from his stay at the Menninger Clinic and the diagnosis there of depression and attention deficit hyperactivity disorder. The depression was characterized by impulsive behavior, which respondent claimed was manifested by self-destructive behavior that resulted in the disciplinary violations. But Dr. John C. Kennedy, a psychiatrist, testified that respondent was not suffering from any mental disorder or mental illness that so impaired him as to cause or contribute to the misconduct. The board found that Dr. Kennedy's opinion was more persuasive than the Menninger Clinic reports.

{¶ 26} The board further found mitigating respondent's participation in, and full compliance with, OLAP. The board additionally noted that respondent was being punished for his misconduct via his felony theft conviction and that respondent now clearly recognizes the severe sanctions that accompany a felony conviction. BCGD Proc.Reg. 10(B)(2)(f).

{¶ 27} The panel recommended that respondent be suspended from the practice of law indefinitely with no credit for the interim suspension imposed by this court on November 8, 2004. The board adopted the panel's recommendation.

## Review

{¶ 28} Respondent does not challenge the board's findings of misconduct. We have reviewed the board's record and its report, and we agree that respondent violated DR 1–102(A)(3), 1–102(A)(4), 9–102(A), 9–102(B)(3), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3), and Gov.Bar R. V(8)(E)(1)(a).

{¶ 29} Respondent does, however, challenge the recommended sanction as excessive. Respondent argues for no more than a two-year actual suspension with credit for the suspension already served.

{¶ 30} We have imposed indefinite suspensions in similar cases when an attorney has misappropriated law firm funds for his own use. See, e.g., *Toledo Bar Assn. v. Crossmock*, 111 Ohio St.3d 278, 2006-Ohio-5706, 855 N.E.2d 1215 (attorney suffering from mental disorder misappropriated funds from his law firm

over several years); *Disciplinary Counsel v. Yajko* (1997), 77 Ohio St.3d 385, 674 N.E.2d 684 (attorney misappropriated funds from his law firm on multiple occasions over several years); and *Disciplinary Counsel v. Crowley* (1994), 69 Ohio St.3d 554, 634 N.E.2d 1008 (attorney misappropriated funds from his law firm by submitting fraudulent expense-reimbursement requests).

{¶ 31} In this matter, respondent committed multiple violations showing a pattern of misconduct involving fraud and dishonesty. We find that respondent's pattern of misconduct, and the fact that he used his position as an attorney to steal the funds, "makes respondent's wrongdoings particularly egregious." *Disciplinary Counsel v. Yajko,* 77 Ohio St.3d at 387–388, 674 N.E.2d 684.

{¶ 32} Moreover, while respondent has submitted mitigating evidence, we find that his mitigation claims are mostly unpersuasive. For instance, respondent claims that the board gave insufficient consideration to evidence that his mental illness contributed to his misconduct. But this claim is belied by the fact that some of respondent's misconduct occurred after respondent had received treatment for his mental disability. Respondent admitted to five disciplinary violations in regard to the Brock and Flottman grievances that involved misconduct occurring after he had returned from the Menninger Clinic in January 2004.

{¶ 33} Respondent also maintains that there was no harm to his clients because he did not steal directly from them. Rather, respondent contends that he misappropriated funds from one victim, the Phillips Law Firm, to which he has paid restitution. But respondent overlooks his other misconduct. For example, respondent converted a client's court costs to his own use when he refused to forward the $283 refund check issued by the clerk of courts. Respondent also fails to consider the embarrassment and concern that clients Lucas and Butts endured when—due to respondent's dishonesty—it appeared that they had not paid retainer fees. Finally, respondent ignores the harm resulting from his neglect of legal matters, such as the dismissal of Duritsch's divorce due to respondent's failure to prosecute and the default judgment entered against the Brocks when respondent missed a filing deadline.

{¶ 34} Based on the foregoing, we agree with the board that respondent does not yet fully appreciate the wrongful nature of his misconduct. In determining the appropriate length of the suspension, "we must recognize that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, at ¶ 53.

{¶ 35} Accordingly, respondent is hereby suspended from the practice of law indefinitely with no credit for his interim suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

PFEIFER, J., would indefinitely suspend respondent from the practice of law in Ohio but give credit for one year of respondent's interim suspension.

_____

Stephen M. Nechemias and Edwin W. Patterson III, for relator.

H. Fred Hoefle, for respondent.