**DISCIPLINARY COUNSEL *v*. BRENNER**.

**[Cite as *Disciplinary Counsel v. Brenner*,**

**122 Ohio St.3d 523, 2009-Ohio-3602.]**

*Attorneys — Misconduct — Engaging in conduct involving fraud, deceit, dishonesty, or misrepresentation — Conduct adversely reflecting on fitness to practice law — Conduct prejudicial to the administration of justice — Two-year suspension, with one year stayed.*

(No. 2008-2438 — Submitted April 7, 2009 — Decided July 29, 2009.)

ON CERTIFIED REPORT of the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-086.

_____

**Per Curiam**.

{¶ 1} Respondent, Todd A. Brenner of Columbus, Ohio, Attorney Registration No. 0051839, was admitted to the practice of law in Ohio in 1991. In June 2008, relator, Disciplinary Counsel, filed an amended two-count complaint against respondent alleging several instances of professional misconduct arising out of respondent's representation of two clients in separate personal-injury actions.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for two years, with one year stayed. The recommendation is based on the board's findings that respondent violated ethical standards by engaging in an extended pattern of fraud and deception. We agree that respondent engaged in this professional misconduct and that a two-year suspension of his license, with one year stayed, is appropriate.

**Misconduct**

**{¶ 3}** The parties stipulated to many of the material facts in this case. As will be set forth more fully below, respondent admitted that in each count, he concealed fee agreements from his law firm and retained funds of which the firm was unaware. He also stipulated that in each case, he wrote, or directed to be written, checks from the firm's operating account for expenses that he attributed to his representation of those clients. Respondent stipulated that those checks actually represented payment for personal expenses incurred by respondent or his family members.

**{¶ 4}** The complaint alleged in both counts that respondent had violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving fraud, deceit, dishonesty, or misrepresentation), 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects upon his fitness to practice law). The complaint additionally alleged, as to Count II only, violations of DR 2-106(A) (a lawyer shall not enter into an agreement for, charge, or collect a clearly excessive fee) and DR 5-101(A)(1) (except with the consent of a client after full disclosure, a lawyer shall not accept employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's financial and personal interests).

*Count I*

**{¶ 5}** In 2002, respondent was retained by Mary Stailey, his stepgrandmother, to represent her in a personal-injury case. Despite what appears to be a computer-generated description of the matter as "contingency/personal injury/flat fee," respondent stated that there was no written fee agreement between the two because she was a close family member and he was not seeking a fee.

**{¶ 6}** Respondent settled the case for approximately $35,000. After speaking with Stailey and her son (respondent's stepfather), it was agreed that she would receive $25,000 immediately. Respondent would keep the balance in his

law firm's client trust account for the payment of any medical bills that were outstanding. It is undisputed that Stailey directed him to keep whatever funds remained after the payment of her medical bills — regardless of the amount — as a token of appreciation.

{¶ 7} Respondent did not tell his law firm about this arrangement or the approximately $10,000 that he retained in the client trust account pursuant to that agreement. Respondent quickly transferred nearly $5,000 from the client trust account into the office operating account. Over the next four months, respondent either wrote or directed office personnel to write three checks from the operating account, and he recorded them as expenses related to Stailey's case. These checks — totaling almost $9,650 — were written to three different payees but were not related to her case. Instead, the checks were actually payment for personal expenses incurred by respondent or his wife. Respondent additionally billed the office account for over $400 in travel expenses that he alleged were related to Stailey's case but that respondent never actually incurred.

*Count II*

{¶ 8} In 2004, Linda Weaver hired respondent to represent her in a personal-injury matter. The two entered into a written contingent-fee agreement in which the firm would receive one-third of any settlement proceeds. Eight months later, respondent settled Weaver's case for $23,500.

{¶ 9} Respondent met with Weaver to discuss fund disbursement. Pursuant to the contingency agreement, slightly more than $7,800 was owed to respondent's law firm. There were also some outstanding medical bills that would require payment, and respondent discussed two options with Weaver. The first was for her to take the balance of the settlement money and pay the bills herself. The second option was for her to take an agreed-upon portion of the proceeds and for respondent to retain the rest to pay for known bills that he hoped to negotiate to a lower amount. Weaver agreed to the latter. She elected to take

$6,000 and additionally told respondent that she wanted him to keep whatever amount was left after all her medical bills were paid. The veracity of that arrangement is not in dispute. None of this agreement, however, was reduced to writing or disclosed to respondent's law firm.

{¶ 10} Respondent ultimately settled Weaver's outstanding medical bills for approximately $2,100. Respondent met with her again and they agreed that she would take an additional amount of approximately $2,700. His client, however, was apparently concerned that a medical provider might submit a last-minute invoice, and so it was also agreed that respondent would continue to retain the remaining approximately $4,790 until the statute of limitations on her personal-injury action passed. Once that deadline passed, Weaver instructed respondent to keep the remaining funds, irrespective of amount. Ultimately, no further medical bills were submitted.

{¶ 11} Respondent did not tell his firm about this fee. Instead, he wrote, or had written for him, four checks from the operating account totaling $4,790 that he attributed to Weaver's case. Once again, however, the checks were for respondent's personal bills.

### Disciplinary Proceedings

{¶ 12} Respondent stipulated that in both counts, his actions violated DR 1-102(A)(4) and (6). He did not stipulate to the other violations alleged; those charges, along with the appropriate sanction to be imposed, were the focus of a hearing before a panel of the Board of Commissioners on Grievances and Discipline.

{¶ 13} Respondent, at the hearing, emphasized that neither client was harmed by his misconduct. In each case, his retention and personal use of settlement proceeds was at the express directive of his clients. When asked why he nevertheless concealed portions of these fee agreements and funds from his firm, his response was two-fold. Respondent first testified that he considered the

remainder of Stailey's settlement proceeds to be a gift from her, and he implied that he initially had a similar opinion of the Weaver funds. He also spoke, however, of his lingering resentment over a partner's handling of fees in a very large personal-injury case and felt that those feelings may have clouded his judgment.

{¶ 14} Respondent also presented witnesses and approximately 40 letters attesting to his good character. This was in addition to two stipulated mitigating factors contained in BCGD Proc.Reg. 10(B)(2)(a) and (d) – the lack of a prior disciplinary record and respondent's full cooperation with the disciplinary proceedings.

{¶ 15} Besides the stipulated violations, the panel also found that respondent violated DR 1-102(A)(5) in both counts. It found no violation of DR 2-106(A) or 5-101(A)(1), and recommended that those charges be dismissed.

{¶ 16} In determining the sanction to be recommended, the panel considered the stipulated mitigating factors and found a third mitigating factor – a timely good-faith effort at restitution.[1] It also found three aggravating circumstances: (1) dishonest or selfish motive, (2) pattern of misconduct, and (3) multiple offenses. BCGD Proc.Reg. 10(B)(1)(b), (c), and (d). It further commented that "[a]n argument could be made that the funds Respondent stole could have been utilized by his former law firm." Ultimately, the panel recommended that respondent be suspended from the practice of law for 18 months, with 12 months of that suspension stayed.

{¶ 17} The board adopted the panel's findings of fact and conclusions of law, but not its recommendation. Stressing respondent's "extended pattern of

---

1. After respondent was expelled from his law firm, he tendered a check to Mary Stailey for an additional $11,000 that she refused to cash. At about the same time, he also wrote a personal check to Linda Weaver for $4,790.

fraud and deception," the board recommended that respondent be suspended for two years, with one year of the suspension stayed.

{¶ 18} Relator and respondent both filed objections to the board's report. Relator objected to the dismissal of DR 2-106(A) and 5-101(A)(1) in Count II. Relator argued with respect to the former that respondent's retention of the remainder of Weaver's settlement proceeds after her medical bills were paid, when combined with the amount of the contingency fee, constituted a clearly excessive fee. With respect to the conflict-of-interest provisions of DR 5-101(A)(1), relator asserted that respondent's potential desire to maximize the amount of funds left over after medical bills were paid could have compromised his ability to negotiate the best possible medical billing outcome for Weaver.

{¶ 19} Respondent objected to the finding that he twice violated DR 1-102(A)(5). He proposed that the rule required that the misconduct take place in an administrative or judicial proceeding. He argued that because both of the cases involved were settled without going to court, there was no violation of that Disciplinary Rule.

{¶ 20} Respondent also objected to the board's proposed sanction. He disputed the board's characterization of his acts as exhibiting a pattern of misconduct, describing them instead as simply isolated incidents. He stressed his recognition of, and remorse for, the wrongfulness of his acts, as well as the evidence of his good character. He reiterated the lack of harm to either client and noted that he had made restitution to both individuals.

{¶ 21} We have thoroughly reviewed the record and are not persuaded by either relator's or respondent's objections to the board's conclusions of law or recommendation. We accordingly adopt the board's findings of fact, conclusions of law, and recommendation. We find that an actual suspension is warranted, based on previous decisions that have deemed this sanction to be appropriate where an attorney has misappropriated law-firm funds. See *Toledo Bar Assn. v.*

*Crossmock,* 111 Ohio St.3d 278, 2006-Ohio-5706, 855 N.E.2d 1215 (indefinite suspension for attorney's misappropriation of over $300,000 in law firm funds); *Disciplinary Counsel v. Yajko* (1997), 77 Ohio St.3d 385, 674 N.E.2d 684 (indefinite suspension for misappropriating law firm funds on 20 occasions); *Disciplinary Counsel v. Crowley* (1994), 69 Ohio St.3d 554, 634 N.E.2d 1008 (indefinite suspension for misappropriation of approximately $200,000 of law firm funds); *Columbus Bar Assn. v. Osipow* (1994), 68 Ohio St.3d 338, 626 N.E.2d 935 (indefinite suspension for repeated failure to report fees to firm, misrepresenting expenses, and misappropriation).

**{¶ 22}** Respondent is hereby suspended from the practice of law in Ohio for two years, with one year of the suspension stayed. Costs are taxed to respondent.

Judgment accordingly.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER, J., dissent and would suspend respondent from the practice of law in Ohio for 18 months, with 12 months stayed.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

The Anelli Law Firm, L.L.C., and Dianna M. Anelli, for respondent.

_____