TOLEDO BAR ASSOCIATION *v*. SCOTT.

[Cite as *Toledo Bar Assn. v. Scott*, 129 Ohio St.3d 479, 2011-Ohio-4185.]

*Attorneys—Misconduct—Fabrication of evidence submitted to disciplinary authority—Failure to account for client funds—Failure to advise client of lack of malpractice insurance—Failure to deposit fees not yet earned into trust account—Engaging in conduct adversely reflecting on fitness to practice law—two-year suspension, one year stayed, on conditions.*

(No. 2010-2265—Submitted February 16, 2011—Decided August 25, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-016.

_____

**Per Curiam.**

{¶ 1} Respondent, Robert Bernal Scott, Attorney Registration No. 0073411, was admitted to the practice of law in Ohio in 2001. On February 8, 2010, the Toledo Bar Association, relator, filed a two-count complaint against respondent. After a first amendment of the complaint on May 28, 2010, a second amended complaint was filed on July 2, 2010, adding a third count.

{¶ 2} On August 9, 2010, the parties submitted stipulations of fact and misconduct for some of the allegations, and a panel of the Board of Commissioners on Grievances and Discipline conducted a hearing on the remaining allegations. The panel accepted the parties' agreed stipulations, made additional findings of fact and conclusions of law, and recommended that respondent be suspended from the practice of law for one year, with six months of the suspension stayed, upon conditions. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 3}** On January 12, 2011, this court issued an order directing the parties to show cause why the recommendation of the board should not be confirmed by the court. The parties did not file objections to the show-cause order. We adopt the board's findings and conclusions that respondent violated ethical standards incumbent on Ohio lawyers. However, we reject the board's recommended sanction. Although the board accepted the parties' stipulations to certain violations of the Ohio Rules of Professional Conduct, the stipulations do not tell the entire story of misconduct in this case and the board's reliance on our precedent related to the stipulated violations is misplaced. For the reasons that follow, we suspend respondent's license to practice law in Ohio for two years, with one year of the suspension stayed on the conditions set by the panel.

### Misconduct

### Count 1 (The Jameson Matter)

**{¶ 4}** Respondent stipulated that in 2007, he was hired by Lawrence Jameson to represent him on a charge of aggravated murder. Prior to representing Jameson, respondent had never tried a murder case. The parties stipulated that Jameson signed a general power of attorney ("POA") in favor of respondent and gave respondent his ATM card and personal identification number.

**{¶ 5}** Over the next several weeks, respondent made seven ATM withdrawals of $500 each from Jameson's bank account, none of which were deposited into a trust account. In November 2007, respondent, using the POA, closed Jameson's 401(k) account and deposited $24,456 from that account into his business account before he had earned a fee of that size based on his hourly fee agreement with Jameson. Respondent also used the POA to gain access to Jameson's home, where he took possession of some of Jameson's personal property, including a pair of Cleveland Browns football tickets. Respondent claimed that he had intended to use the tickets as evidence in Jameson's trial. However, respondent used the tickets to attend the game with a friend.

{¶ 6} During the representation, respondent also obtained possession of Jameson's 1983 Porsche 928 and a 1990 Cadillac Fleetwood by causing Jameson to sign the backs of the titles to both vehicles as transferor. Respondent then filled in his own name as transferee on both vehicles without any written authorization from Jameson. Respondent then had a secretary notarize Jameson's signature on the titles, even though she had not seen Jameson sign them. Respondent stipulated that he had failed to keep records of, or account to Jameson for, the personal property he received.

{¶ 7} Respondent stipulated that during the investigation into the Jameson grievance, he had produced copies of hourly bills, claiming that they were bills he had delivered to Jameson periodically during the representation. But these documents were not copies of actual bills that respondent presented to Jameson. Rather, respondent fabricated and submitted false documents for the purpose of misleading the investigator. Included in the fabricated bills were claims of time spent conferring with Jameson at the jail. However, for ten of these entries, totaling 22 hours, the visitor log at the jail did not show respondent signing in.

{¶ 8} After deducting amounts expended on Jameson's behalf, respondent received, according to his attorney's calculation, approximately $21,900 in cash and other property in connection with his representation of Jameson. Respondent stipulated that he had not adequately accounted for these funds.

*Count 2 (The Triplett Matter)*

{¶ 9} Respondent stipulated that he had been retained by the family of Timothy Triplett to represent Triplett in an appeal of a criminal conviction in late 2007 or early 2008. At the time he was retained, respondent did not have a malpractice insurance policy and did not provide his client with the notice required by Prof.Cond.R. 1.4(c).

*Count 3 (Trust Account)*

**{¶ 10}** During December 2009 through February 2010, respondent maintained a client trust account with Huntington Bank. While respondent maintained the account, he authorized debits of $40 per month to be paid to a credit-card servicing company for its processing of credit-card charges by respondent's clients for fees payable to respondent. Respondent held client funds in the account, but he failed to maintain adequate and accurate records of those funds. During the first week of February 2010, despite the fact that respondent's trust account continued to hold client funds, the debits for the credit-card company caused the account to become overdrawn. The bank issued a notice to respondent that the account contained insufficient funds to meet further debits or other demands on the account.

### Stipulated Violations

**{¶ 11}** The panel and board accepted the parties' stipulations, and we agree that the above conduct resulted in violations of the following disciplinary rules: Prof.Cond.R. 1.15(c) (respondent failed to deposit fees paid in advance into a trust account), 8.1(a) (respondent made a false statement of material fact in connection with a disciplinary matter), 8.4(h) (by requesting a notary public to notarize Jameson's signature improperly, respondent engaged in conduct that adversely reflects on his fitness to practice law), 1.15(a) (respondent failed to adequately safeguard and to maintain adequate records of client funds and other property), and 1.4(c) (respondent failed to notify his client that respondent had no professional-liability insurance).

### Aggravation and Mitigation

**{¶ 12}** The panel found the following aggravating factors: multiple offenses (BCGD Proc.Reg. 10(B)(1)(d)) and the submission of false evidence and false statements during the disciplinary process (BCGD Proc.Reg. 10(B)(1)(f)).

Further, the panel also concluded that the submission of false evidence and statements implied a dishonest or selfish motive (BCGD Proc.Reg. 10(B)(1)(b)).

{¶ 13} In mitigation, the panel adopted the parties' stipulation that respondent has no prior disciplinary record (BCGD Proc.Reg. 10(B)(2)(a)) and that respondent has acknowledged his wrongful conduct. The panel also found a timely good-faith effort to make restitution (BCGD Proc.Reg. 10(B)(2)(c)) and a cooperative attitude after acknowledging the fabricated record (BCGD Proc.Reg. 10(B)(2)(d)).

### Sanction

{¶ 14} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the duties violated by the lawyer in question and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. See *Lake Cty. Bar Assn. v. Troy*, 121 Ohio St.3d 51, 2009-Ohio-502, 901 N.E.2d 809, ¶ 11.

{¶ 15} As a sanction, respondent and relator jointly recommended a one-year suspension with six months stayed upon the following conditions: respondent shall work with a mentoring attorney for one year, the mentoring attorney and respondent shall meet monthly, the mentor shall submit a quarterly report to relator, and respondent shall take three hours of courses on law-office management within the first six months of the suspension. The board recommends that we accept the stipulated sanction, but we decline to do so.

{¶ 16} To determine the appropriate length of a suspension, we have recognized that our primary purpose in imposing disciplinary sanctions is not to punish the offender but to protect the public. *Cincinnati Bar Assn. v. Schwieterman*, 115 Ohio St.3d 1, 2007-Ohio-4266, 873 N.E.2d 810, ¶ 34, citing *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815

N.E.2d 286, ¶ 53. We look to similar cases for the sanctions that are most appropriate for similar misconduct. *Disciplinary Counsel v. Jackson*, 127 Ohio St.3d 250, 2010-Ohio-5709, 938 N.E.2d 1021, ¶ 27.

{¶ 17} If one were to read only the stipulated violations, the recommended sanction would seem to align with the sanctions we previously have imposed for similar violations. The facts as stipulated by the parties depict misconduct of a very serious nature. Respondent used his client's ATM card to withdraw large sums of money for purposes unrelated to client services. Using the power of attorney he caused his client to execute, respondent closed his client's retirement account and deposited over $24,000 from that account into respondent's own business account. Respondent took two Cleveland Browns tickets from his client's home and used them to attend a game with his friend.

{¶ 18} Respondent also obtained possession of two motor vehicles, a Porsche and a Cadillac, by causing his freelance secretary to commit fraud by notarizing an affidavit without observing his client's signature. Respondent did all of this while his client was in jail on a murder charge. Moreover, respondent lied to disciplinary authorities about how often he met with his client and fabricated billing statements to mislead the investigator. Taken in totality, this course of conduct falls far below the professional standards lawyers should uphold and merits more than a six-month actual suspension from the practice of law.

{¶ 19} "Lawyers who choose to engage in fabrication of evidence, deceit, misrepresentation of facts, and distortion of truth do so at their peril." *Cleveland Bar Assn. v. McMahon*, 114 Ohio St.3d 331, 2007-Ohio-3673, 872 N.E.2d 261, ¶ 29. Thus, although the board found that respondent actually collected less compensation than he was entitled to receive under the fee agreement, the credibility of respondent's later documentation, cobbled from a self-serving memory, is weak. The reality is that respondent's use of his client's ATM card

and other personal effects had very little to do with compensation for legal services.

**{¶ 20}** The disciplinary panel adopted the parties' stipulation that respondent has acknowledged the wrongfulness of his conduct. While this acknowledgment is an important consideration, it does not change the deceitful nature of respondent's misconduct and the fact that he took advantage of a vulnerable client. Respondent's conduct amounted to more than just failing to deposit fees into a trust account or failing to maintain records of his client's funds (although these are serious violations). His conduct was intentionally deceptive and equates to stealing from his client.

**{¶ 21}** Indeed, we have imposed substantial sanctions for attorneys who have taken funds from their clients. In *Disciplinary Counsel v. Blair*, 128 Ohio St.3d 384, 2011-Ohio-767, 944 N.E.2d 1161, we suspended an attorney from the practice of law for two years with 18 months stayed on conditions because, in her capacity as a court-appointed guardian, the attorney withdrew all of the ward's funds from her client's trust account, bankrupting the ward, but did not use any of those funds for the ward's benefit. The attorney further authorized her staff to prepare false affidavits. And in *Dayton Bar Assn. v. Gross* (1991), 62 Ohio St.3d 224, 581 N.E.2d 520, we indefinitely suspended an attorney who, pursuant to a power of attorney, made a series of withdrawals from his mother's bank account without her knowledge or consent, used the funds to meet his personal financial needs (eventually depleting her funds), and failed to pay her nursing-home bills.

**{¶ 22}** Likewise, we have imposed suspensions greater than the one imposed here on attorneys who have deceptively elicited funds from nonclients. In *Cincinnati Bar Assn. v. Farrell*, 119 Ohio St.3d 529, 2008-Ohio-4540, 895 N.E.2d 800, we imposed a two-year suspension with one year stayed on conditions for an attorney who forged his wife's signature on a power of attorney to obtain a line of credit and fabricated numerous documents to cover up his

actions.  In *Northwest Ohio Bar Assn. v. Archer*, 129 Ohio St.3d 204, 2011-Ohio-3142, 951 N.E.2d 78, the court imposed a one-year suspension on an attorney who not only allowed his malpractice insurance to lapse without informing his clients, but also converted to his own use the taxes he had withheld from his secretary's wages.

### Conclusion

**{¶ 23}** The practice of law is not a right, and our Rules of Professional Conduct demand the highest standards of conduct from those in our profession. *McMahon*, 114 Ohio St.3d 331, 2007-Ohio-3673, 872 N.E.2d 261, ¶ 29. Respondent engaged in offenses that undermined the integrity of the legal profession and indicated a selfish indifference to his professional obligations.

**{¶ 24}** Having weighed the aggravating and mitigating factors in this case as found by the board and having considered the sanctions previously imposed for comparable conduct, we reject  the parties' stipulated sanction.  Accordingly, we suspend Robert Bernal Scott from the practice of law for two years, with the final 12 months stayed upon the following conditions: (1) respondent shall serve six months of probation supervised by a monitor appointed by relator in accordance with Gov.Bar R. V(9) and (2) in addition to respondent's other CLE requirements under Gov.Bar R. X(3)(G), respondent shall complete three hours of CLE in law-office management within the first six months of his suspension.  If respondent fails to comply with these conditions, the stay will be lifted, and respondent shall serve the entire two-year suspension.  Costs are taxed to the respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Robison, Curphey & O'Connell and W. David Arnold; Michael J. Manahan; and Jonathan B. Cherry, Bar Counsel, for relator.

James D. Caruso, for respondent.

_____