Cuyahoga County Bar Association *v.* Glaeser.

[Cite as *Cuyahoga Cty. Bar Assn. v. Glaeser,*
120 Ohio St.3d 350, 2008-Ohio-6199.]

(No. 2008–1215—Submitted August 26, 2008—Decided December 4, 2008.)

## Per Curiam.

{¶ 1} Respondent, William P. Glaeser of Parma, Ohio, Attorney Registration No. 0075837, was admitted to the practice of law in Ohio in 2003. The Board of Commissioners on Grievances and Discipline has recommended that we indefinitely suspend respondent's license to practice, based on findings that he misled a client about having filed and settled a lawsuit on the client's behalf. We agree that respondent violated the Code of Professional Responsibility but find that a two-year suspension of his license, with one year stayed on conditions of restitution and no further misconduct, is the appropriate sanction under the circumstances.

{¶ 2} Relator, Cuyahoga County Bar Association, charged respondent with multiple violations of the Disciplinary Rules, all for misconduct involving a single client. Respondent received notice of the complaint but did not answer, and relator moved for default. See Gov.Bar R. V(6)(F). A master commissioner appointed by the board granted the motion, making findings of misconduct and recommending the indefinite suspension. The board adopted the master commissioner's findings and recommendation.

### Misconduct

{¶ 3} Respondent agreed in April 2004 to represent Gregory Bacon in an action against Bacon's former building contractor, David Kuhns, d.b.a. D & D Vinyl Siding and Windows ("D & D"). Respondent advised Bacon to forgo filing a lawsuit against D & D and to sue D & D's bonding company instead. Bacon accepted this advice and paid respondent $150 in filing fees.

{¶ 4} Later, respondent falsely told Bacon that he had filed suit against D & D's bonding company. In May 2006, respondent advised Bacon that the bonding company had agreed to pay $300,000 to settle the claim. He told Bacon that the settlement would be paid in $150,000 installments, the first in June and the second in November of that year.

{¶ 5} When June came, respondent told Bacon that the owner of the bonding company had been incarcerated and had not paid the first installment. Respondent reported that a judge had ordered the owner to pay $500 in sanctions for each day that the owner failed to comply with the settlement agreement, and he

assured Bacon that the bonding company's assets had been frozen. Bacon later learned that everything respondent had told him regarding his case was untrue.

{¶ 6} Bacon discharged respondent in November 2006 and requested the return of his case file. Respondent did not give up the file until the investigation of Bacon's grievance. In late November 2007, respondent registered as an attorney on inactive status.

{¶ 7} Clear and convincing proof establishes that respondent misled his client, failed to pursue his client's case as promised, and then failed to promptly return his client's property. We therefore find that respondent violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), 6–101(A)(3) (a lawyer shall not neglect an entrusted legal matter), 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of a client), 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment), DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage a client), DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to a client as requested property that the client is entitled to receive).[1]

## Sanction

{¶ 8} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer in question and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

### A. Aggravating and Mitigating Factors

{¶ 9} We have already discussed respondent's violations of the duties owed to his client (DR 1–102(A)(4), 6–101(A)(3), 7–101(A)(1), (2), and (3), and 9–102(B)(4)),

---

1. The complaint charged a violation of DR 9–102(B)(4), but the master commissioner and board parenthetically misquoted the substance of that rule, quoting instead the substance of DR 9–102(B)(3) (a lawyer shall maintain complete records of all funds coming into the possession of the lawyer and render appropriate accounts to clients regarding them).

the judicial system (DR 1–102(A)(5)), and the legal profession (DR 1–102(A)(6)). Exacerbating these ethical breaches is the fact that respondent was repeatedly dishonest about Bacon's case. See BCGD Proc.Reg. 10(B)(1)(b). Moreover, though we have no evidence that respondent's lapses caused Bacon greater financial loss than the $150 filing fee, we also have no evidence that he has made restitution in this amount. See BCGD Proc.Reg. 10(B)(1)(i).

{¶ 10} Mitigating circumstances are also present. Respondent has no prior disciplinary record, see BCGD Proc.Reg. 10(B)(2)(a), and although he did not answer the complaint, he did cooperate in the investigation of Bacon's grievance. Respondent met with relator's investigator despite the fact that he was experiencing serious health problems and had recently undergone quadruple bypass surgery. He also candidly admitted having failed to file Bacon's complaint in 2004 and having misrepresented that he had. Respondent revealed that at the time of his dealings with Bacon, he was recovering from his son's 2003 murder. Respondent also noted that although he is in his 50s, he is a recent (2003) admittee to the bar.

## B. Sanctions in Similar Cases

{¶ 11} In *Toledo Bar Assn. v. Hickman,* 107 Ohio St.3d 296, 2005-Ohio-6513, 839 N.E.2d 24, we found a lawyer in violation of DR 1–102(A)(4), 6–101(A)(3), and 7–101(A)(2) because he had falsely advised a couple that he had filed a wrongful-death action for them and then lied repeatedly about how the case was progressing. Id. at ¶ 4. In addition, the lawyer had previously dismissed the couple's son's personal-injury action without permission and then lied about the circumstances of the dismissal, telling the couple that the defendant had agreed to settle the case and that he was having difficulty collecting the money. Id. at ¶ 6–8. The statute of limitations lapsed on both claims, although the lawyer's malpractice insurance covered some of the clients' losses. Id. at ¶ 12.

{¶ 12} In *Hickman,* the lawyer's 25–year, previously unblemished legal career weighed in his favor, as did his complete admission to and remorse for his wrongdoing. Id. at ¶ 10. That lawyer also presented strong evidence of his overall good character and reputation. Id. at ¶ 11. We suspended the lawyer's license to practice for one year and stayed the last six months on the condition of no further misconduct. Id. at ¶ 15.

{¶ 13} In *Disciplinary Counsel v. Keller,* 110 Ohio St.3d 240, 2006-Ohio-4354, 852 N.E.2d 1195, the lawyer failed to advise a client that he had no malpractice insurance as required by DR 1–104, lied about having filed a personal-injury action and having received a settlement offer from the insurer, and then tried to get his client to agree to the insured's alleged settlement offer so that the attorney could pay the amount himself to conceal his malpractice. Id. at ¶ 4–5. Mitigating factors included that the lawyer had no disciplinary record, had

conceded all wrongdoing, and had shown good character apart from the incidents at issue. Id. at ¶ 10. That lawyer had also experienced great misfortune at the time of his wrongdoing, including the murder of his child and an alcohol addiction that contributed to cause his dishonesty. Id. We suspended the lawyer for two years and stayed the last 18 months on the conditions of restitution, compliance with an Ohio Lawyers Assistance Program, and no further misconduct. Id. at ¶ 14.

{¶ 14} The lawyer in *Disciplinary Counsel v. Novak,* 110 Ohio St.3d 134, 2006-Ohio-3823, 851 N.E.2d 498, violated the same Disciplinary Rules as respondent and some additional rules as well. Id. at ¶ 25. That lawyer accepted money to file an appeal, failed to file it, and then lied more than once to the client about the filing. Id. at ¶ 13. The lawyer also told one of his clients that he had filed successive motions to enforce a settlement when he had not. Id. at ¶ 15. The lawyer had also failed to appear at a hearing in a third client's case, prompting the court to grant summary judgment against his client and award sanctions. Id. at ¶ 8. The lawyer further failed to tell his clients that he had no malpractice insurance and ignored efforts to investigate his misconduct. Id. at ¶ 4, 9, 11.

{¶ 15} We ordered a two-year suspension of the lawyer's license in *Novak,* with a stay of the second year on conditions that the lawyer completed a six-month monitored probation of his practice and made restitution. Id. at ¶ 26. That lawyer had no prior record of discipline, and he also eventually conceded his ethical lapses. Id. at ¶ 20. Also weighing in favor of the stayed suspension was the fact that the lawyer had a depressive condition that had contributed to cause his ethical misconduct and for which he had sought treatment. Id. at ¶ 21.

## C. Disposition

{¶ 16} We hold that a two-year suspension with one year stayed on the conditions of no further misconduct and restitution is consistent with the sanctions we have ordered in similar cases. Respondent is therefore suspended from the practice of law in Ohio for two years; however, the second year is stayed on the conditions that he commit no further misconduct and, within 30 days of our order, pay $150 in restitution, with interest at the judgment rate, to Bacon. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and he will serve the entire two-year suspension.

{¶ 17} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., dissents and would indefinitely suspend the respondent.

Ellen S. Mandell, Bar Counsel, Thomas J. Escovar, and Gary S. Fishman, for relator.

