DISCIPLINARY COUNSEL *v.* DAVIS.

[Cite as *Disciplinary Counsel v. Davis,*
121 Ohio St.3d 84, 2009-Ohio-500.]

(No. 2008–1729—Submitted October 14, 2008—Decided February 12, 2009.)

Per Curiam.

{¶ 1} Respondent, Sherry Darlene Davis of Waverly, Ohio, Attorney Registration No. 0068036, was admitted to the practice of law in Ohio in 1997. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for two years and stay the last 18 months on conditions including monitored probation. The board made this recommendation after finding that respondent had failed to provide her client's insurer with notice of a settlement with a tortfeasor's insurer, which caused the client's insurer to deny the client's claim for underinsured-motorist coverage, and had then strung her client along for years without telling him of the denial. We agree that respondent committed professional misconduct as found by the board; however, to safeguard the public, we hold that a two-year suspension with only the last year stayed on conditions is the appropriate sanction.

{¶ 2} Relator, Disciplinary Counsel, charged respondent in a two-count complaint with violations of the Code of Professional Responsibility, the Rules of

Professional Conduct,[1] and the Gov.Bar R. V(4)(G) requirement that lawyers cooperate in investigations of misconduct. A panel of the board heard the case, including respondent's stipulations to the charged misconduct, and made findings of fact, conclusions of law, and the recommendation for a two-year suspension and 18–month stay. The board adopted the panel's findings of misconduct and recommendation.

{¶ 3} Neither party objects to the board's recommendation.

## Misconduct

### Count I

{¶ 4} Respondent agreed to represent Ryan Gillette after he was seriously injured in an October 1998 traffic accident. The tortfeasor's insurer was Progressive Insurance, and his policy had a $25,000 limit. Gillette was insured by Grange Insurance, and his policy included underinsured-motorist coverage of up to $100,000.

{¶ 5} Respondent submitted Gillette's claim for losses caused by the accident to Grange in late July 1999. In early August of that year, respondent reached a settlement with Progressive for the $25,000 policy limit. In late November 1999, Grange denied Gillette's claim for underinsured-motorist coverage because respondent had failed to provide notice of the settlement with Progressive, which was a requirement under Gillette's policy.

{¶ 6} Respondent never told Gillette that his claim had been denied. In fact, Gillette did not learn that he would not receive any underinsured-motorist coverage until he retained another attorney and that attorney made the discovery in January 2006. In those intervening years, Gillette thought that respondent was diligently pursuing his claim because she misled him about proceedings in the case and evaded his inquiries.

{¶ 7} Respondent canceled appointments with her client and fabricated reasons to explain why she could not keep them. In September 2004, respondent falsely represented that she had filed a claim on Gillette's behalf in federal court. Later that fall, respondent falsely told Gillette that she was working with a Cincinnati law firm that specialized in cases like his.

{¶ 8} Gillette finally wrote to the managing partner at respondent's law firm about her in March 2005. Respondent wrote back, enclosing a letter that she had purportedly sent in May 2000 that advised him of her opinion that his claim was

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility.

worth only the $25,000 she had already obtained from Progressive. Gillette had never seen the letter, and respondent later admitted to having fabricated it.

{¶ 9} With new counsel, Gillette filed a civil action against respondent in September 2006. The parties settled the dispute several months later, with respondent's former malpractice-insurance carrier paying the settlement amount.

{¶ 10} We accept respondent's stipulations that she violated the following Disciplinary Rules: DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 7–101(A)(1) (prohibiting a lawyer from intentionally failing to seek a client's lawful objectives), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment), and 7–101(A)(3) (prohibiting a lawyer from intentionally causing a client damage or prejudice).

### Count II

{¶ 11} Respondent also evaded inquiries during relator's investigation. Respondent was twice granted an extension in which to respond to a January 2007 letter of inquiry but still did not reply. In May 2007, respondent scheduled a meeting with relator only to cancel on the appointed day and, after promising to reschedule, never doing so. Relator also subpoenaed respondent to appear in mid-July 2007 for her deposition. Respondent received the subpoena several weeks before the deposition but neither appeared nor offered an explanation for her absence.

{¶ 12} We accept respondent's stipulations that she thereby violated Prof. Cond.R. 8.1(b) (with an exception not applicable here, prohibiting a lawyer from knowingly failing to respond to a demand for information from a disciplinary authority made in connection with a disciplinary matter) and 8.4(d) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice) and Gov.Bar R. V(4)(G).

### Sanction

{¶ 13} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the respondent breached and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. "[W]e also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ('BCGD Proc.Reg.'). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993." *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule

but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 14} Respondent's failure to represent Gillette with loyalty, candor, diligence, and integrity breached duties to her client and the legal profession. Her failure to properly respond to efforts to investigate her misconduct violated duties to the profession and the public.

{¶ 15} In sanctioning lawyers who have engaged in a sustained course of conduct to conceal from their clients a failure to competently pursue claims on their behalf, we have typically imposed a suspension of at least two years. See, e.g., *Disciplinary Counsel v. Manning*, 111 Ohio St.3d 349, 2006-Ohio-5794, 856 N.E.2d 259, ¶ 14 ("The number and intricacy of respondent's lies to his clients, the three-and-a-half-year period during which he continued to mislead them, and the large number of ethical violations found by the board all justify the recommended two-year suspension"). But we have sometimes stayed the last year of a two-year suspension when it was warranted by the circumstances of the case. See, e.g., *Cuyahoga Cty. Bar Assn. v. Glaeser*, 120 Ohio St.3d 350, 2008-Ohio-6199, 899 N.E.2d 140 (lawyer candidly admitted wrongdoing and had only recently been admitted to the bar when he committed the misconduct).

{¶ 16} Aggravating factors weighing against respondent include her dishonest motive, her pattern of misconduct and multiple offenses, and the serious harm she caused. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (h). But respondent, a very recent admittee to the bar with no experience in personal-injury work when she took on Gillette's case, has now conceded the gravity of her misconduct. Moreover, though initially unresponsive to relator's investigation, she has now provided full disclosure, a mitigating factor under BCGD Proc.Reg. 10(B)(2)(d). Finally, the parties stipulated to her good character and reputation apart from her misconduct.

{¶ 17} A two-year suspension with one year stayed on conditions is consistent with the sanctions we have ordered in similar cases. Respondent is therefore suspended from the practice of law in Ohio for two years. The last year of this suspension is stayed on the following conditions: (1) respondent shall complete one year of monitored probation pursuant to Gov.Bar R. V(9) under the auspices of a lawyer appointed by relator, (2) in addition to the requirements of Gov.Bar R. X, respondent shall complete six hours of continuing legal education in ethics and professionalism, and (3) in applying for reinstatement under Gov.Bar R. V(10), respondent shall explain her plan for complying with the professional-liability-insurance requirements in Prof.Cond.R. 1.4(c). If respondent fails to comply with the conditions of the stay, the stay will be lifted, and she will serve the entire two-year suspension.

{¶ 18} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solocheck Beckman, Assistant Disciplinary Counsel, for relator.

Sherry Darlene Davis, pro se.