CINCINNATI BAR ASSOCIATION *v.* LARSON.

[Cite as *Cincinnati Bar Assn. v. Larson,* **124 Ohio St.3d 249, 2009-Ohio-6766.**]

*Attorney misconduct, including failing to seek lawful objectives of clients, causing damage to clients, failing to promptly pay funds to clients, and failing to cooperate in the investigation of misconduct — Two-year suspension, with one year stayed on conditions.*

(No. 2009-1267 — Submitted September 16, 2009 — Decided December 30, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-088.

_____

**Per Curiam**.

{¶ 1} Respondent, Robert K. Larson Jr. of Cincinnati, Ohio, Attorney Registration No. 0042368, was admitted to the practice of law in Ohio in 1989.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for two years, staying 18 months of the suspension on conditions that he commit no further misconduct and complete continuing legal education courses in managing his law office, his caseload, and his time. The recommendation is based on findings that respondent misled one client about the status of her driver's license suspension and other traffic citations, failed to perform his duties as counsel for that client and two others, failed to return unearned fees to all three of these clients, and then failed to cooperate in two of the ensuing disciplinary investigations. We accept the board's findings of professional misconduct and the recommendation for a two-year suspension; however, we order a stay of only one year of the suspension

and, in addition to the cited conditions of the stay, require respondent to complete one year of monitored probation upon his reinstatement to practice.

**{¶ 3}** Relator, Cincinnati Bar Association, charged respondent in a three-count complaint with violations of the Disciplinary Rules of the Code of Professional Responsibility, the Rules of Professional Conduct,[1] and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation). A panel appointed by the Board of Commissioners on Grievances and Discipline heard the case, made findings of misconduct, and recommended a two-year suspension, stayed in full on conditions of no further misconduct and completion of the continuing legal education ("CLE"). The board adopted the panel's findings of misconduct, but "based on [respondent's] acts of dishonesty and harm done to clients," it modified the recommendation to a two-year suspension, with the last 18 months conditionally stayed.

**{¶ 4}** The parties have not objected to the board's report.

### Misconduct

*Count I: The Divorce Case*

**{¶ 5}** In July 2006, a client hired respondent to file for divorce on her behalf, paying him a $1,000 fee. Though she afterward provided all the information and documentation that he asked for, respondent never filed the complaint.

**{¶ 6}** In September 2006, the client filed her own petition for a civil protection order against her then-incarcerated husband. The petition also included a request for the client's exclusive use of her husband's truck, which the domestic-relations court did not grant. After he was released from prison, the

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility. When both the former and current rules are cited for the same act, the allegation constitutes a single ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

husband filed charges, alleging that his wife had used his truck without authorization. Though respondent insisted that he had defended the client against these charges, the client attended two municipal court hearings and at each signed waivers of counsel. The waivers establish that respondent failed to attend these hearings.

{¶ 7} In January 2007, the client sent respondent a letter demanding that he proceed with her divorce or return the $1,000 fee. When respondent did neither, the client sued him in small-claims court. The court continued two hearing dates on respondent's request, but he never appeared. That April, the court granted a default judgment against respondent, awarding the client $1,000 and $85 in court costs, which respondent paid only after a bailiff served him with a writ of execution.

{¶ 8} Respondent admitted that he had failed to perform his duties as counsel for this client and had thereby violated DR 7-101(A)(1), (2), and (3) (prohibiting a lawyer from (1) intentionally failing to seek the lawful objectives of his client, (2) failing to carry out a contract for professional employment without proper withdrawal, and (3) causing damage or prejudice to a client during a professional relationship). He also admitted to having violated DR 9-102(B)(4) and its counterpart, Prof.Cond.R. 1.15(d) (both requiring a lawyer to promptly pay funds that a client is entitled to receive). And because he failed to respond to letters of inquiry about this client's grievance and came unprepared for a deposition during relator's investigation, respondent admitted that he had violated Gov.Bar R. V(4)(G). The board found that respondent had committed this misconduct, as do we.

### Count II: The Traffic-Citation Case

{¶ 9} In January 2007, another client paid respondent $300 to defend her in mayor's court against traffic citations. The client had already failed to appear for one court date and feared that her driver's license might be suspended.

Respondent advised the client that he would arrange with the mayor's court to forgive the failure to appear, drop a citation for "peeling tires," and reduce her speeding ticket to avoid adding points to her driving record.

{¶ 10} But in mid-February 2007, the client received notice that her license had been suspended and that she was required to pay a fee to reinstate it. She again consulted respondent, who advised her that the notice was a mistake and not to pay the reinstatement fee. When the client afterward continued to register concerns over the suspension, respondent assured her that he was working with a prosecutor and would resolve the problem.

{¶ 11} In mid-March 2007, the client received another notice, this one indicating that a warrant had been issued for her arrest. When the client consulted respondent yet again about the license suspension, respondent advised her that if she had to drive, she should "drive safely."

{¶ 12} In April 2007, the client contacted the mayor's court herself and paid the reinstatement fee. Her license was reinstated approximately one week later. That May, the client wrote to respondent, asking for a $300 refund. Respondent did not promptly refund the unearned fee and stopped returning the client's telephone calls.

{¶ 13} Respondent admitted that he had failed to perform his duties as counsel for this client and had thereby violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client informed about the representation), 1.15(d), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving fraud, deceit, dishonesty, or misrepresentation). Because he failed to respond to a letter of inquiry about this client's grievance and came unprepared for a deposition during relator's investigation, respondent also admitted to having violated Gov.Bar R.

V(4)(G). The board found that respondent had committed this misconduct, as do we.

*Count III: The Juvenile Court Case*

{¶ 14} Another client paid respondent $250 to represent him in a juvenile court proceeding. Respondent advised the client that he would obtain a continuance of a court date scheduled for late October 2007. Respondent failed to obtain the continuance, and upon the client's failure to appear, the court issued a bench warrant for his arrest. Respondent did nothing in the case and yet failed to promptly refund unearned fees.

{¶ 15} Respondent admitted that he had failed to perform his duties as counsel for this client and had thereby violated Prof.Cond.R. 1.3, 1.4, and 1.15(d). The board found that respondent had committed this misconduct, as do we.

**Sanction**

{¶ 16} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer in question and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the mitigating and aggravating factors listed in BCGD Proc.Reg. 10(B). *Lake Cty. Bar Assn. v. Troy,* 121 Ohio St.3d 51, 2009-Ohio-502, 901 N.E.2d 809, ¶ 11. We have already identified the duties that respondent breached to his clients and the public.

*Sanctions Imposed in Similar Cases*

{¶ 17} Respondent misled one client repeatedly as to what he had accomplished on her behalf. In two other cases, he totally neglected his client's matters. In *Disciplinary Counsel v. Davis*, 121 Ohio St.3d 84, 2009-Ohio-500, 902 N.E.2d 25, a lawyer failed to notify her client's insurer of a settlement with a tortfeasor's insurer, causing the client's insurer to deny a claim for underinsured-motorist coverage. She then misled the client for years by not telling him of the

denial. We suspended the lawyer's license for two years, staying the second year on conditions including monitored probation, explaining:

{¶ 18} "In sanctioning lawyers who have engaged in a sustained course of conduct to conceal from their clients a failure to competently pursue claims on their behalf, we have typically imposed a suspension of at least two years. See, e.g., *Disciplinary Counsel v. Manning,* 111 Ohio St.3d 349, 2006-Ohio-5794, 856 N.E.2d 259, ¶ 14 ('The number and intricacy of respondent's lies to his clients, the three-and-a-half-year period during which he continued to mislead them, and the large number of ethical violations found by the board all justify the recommended two-year suspension'). But we have sometimes stayed the last year of a two-year suspension when it was warranted by the circumstances of the case. See, e.g., *Cuyahoga Cty. Bar Assn. v. Glaeser,* 120 Ohio St.3d 350, 2008-Ohio-6199, 899 N.E.2d 140 (lawyer candidly admitted wrongdoing and had only recently been admitted to the bar when he committed the misconduct)." Id. at ¶ 15.

{¶ 19} A two-year suspension with one year stayed is as appropriate here as it was in *Davis*, considering the nature of respondent's misconduct. Though he did not hide his inaction for years, respondent did deceive one client and ignored two others. Moreover, respondent is a seasoned professional, whereas Davis was inexperienced. *Davis,* 121 Ohio St.3d 84, 2009-Ohio-500, 902 N.E.2d 25, ¶ 16. And as in *Davis*, respondent evaded inquiries of disciplinary authorities during the disciplinary process. Id. at ¶ 11. Both respondent and Davis also inflicted financial injury: respondent failed to promptly return unearned fees to three clients; Davis's actions foreclosed her client's ability to claim insurance proceeds.

*Mitigating and Aggravating Factors*

{¶ 20} In mitigation, the board found that respondent had no record of having previously violated the Disciplinary Rules or the Rules of Professional Conduct. See BCGD Proc.Reg. 10(B)(2)(a). Respondent also produced medical evidence to show that he had a debilitating sleep disorder during the time of these

events, that the condition had compromised his energy level and focus, and that with treatment his concentration and productivity have improved. The board also accepted the favorable assessments of respondent's character and competence by three judges, given pursuant to subpoenas. All commended his performance in their courts, and none voiced any misgivings as to his integrity. See BCGD Proc.Reg. 10(B)(2)(e). But these character references also commented that respondent was at times late for court.

{¶ 21} Acknowledging his problems with managing his office, caseload, and time, respondent testified that he had started using new scheduling software and had recently been interviewing candidates to fill a position of office assistant. He attributed his problems to the expansion of his practice in terms of the number of cases and the jurisdictions covered. When asked for an explanation for his repeated misconduct, respondent answered: "[I]t was poor organization, poor management, and having too big of a case load spread out over too many counties where I wasn't in the office as much as I needed to be to pay attention to my cases."

{¶ 22} As the board noted, however, neither a voluminous caseload nor excessive travel can explain respondent's misrepresentations to the client in Count II. And although respondent admitted wrongdoing, we share the board's concerns about his evasiveness in discussing these events. When asked by one of the panel members to explain how his having a busy practice resulted in his lying to this client, respondent stated:

{¶ 23} "I talked to one of the — I came to realize, and I think I had said this earlier, that they don't have a prosecutor up there at all times. And I spoke to someone up there, it was one of the deputies I was able to get ahold of, told them what I wanted to do, told them what my intention was. His position was, or what he had said was, I think we can work that out.

**{¶ 24}** "Did I probably relay it inappropriately to [the client]? The answer is yes. I can't specifically recall what I told her. I did tell her who the prosecutor was, I did tell her I talked to someone. I did tell her that it's taken care of, this is the route it's going on. It hadn't been effectively taken care of yet, and I didn't just make it up out of thin air. It was based on that conversation."

**{¶ 25}** Not until this exchange with a panel member did respondent finally acknowledge having misled his client:

**{¶ 26}** "Q: So at the time you made the representation to [the client] that her license would not be suspended, you had no basis in fact for making that statement?

**{¶ 27}** "A: It was my expectation, but, no, it was nothing more than that.

**{¶ 28}** "Q: Did you, in fact, tell her that that was nothing but an expectation?

**{¶ 29}** "A: No.

**{¶ 30}** "Q: So you, in fact, told her that her license would not be suspended?

**{¶ 31}** "A: Correct.

**{¶ 32}** "Q: The same with regard to the [traffic citation for] the peeling of the tires?

**{¶ 33}** "A: Correct.

**{¶ 34}** "Q: And the failure to appear?

**{¶ 35}** "A: Correct.

**{¶ 36}** "Q: And the speeding?

**{¶ 37}** "A: Correct.

**{¶ 38}** "Q: Why did you tell her things had happened or would happen when you had no basis upon which to make that statement? What is going on?

**{¶ 39}** "A: Again, it was my expectation, it was based on my experience. It seemed like that's how it would work out based on the conversation I had with

one of the deputies. I had anticipated it would work out that way. It simply just hadn't happened yet, and I should not have made that statement."

{¶ 40} Even if respondent's busy workload greatly contributed to his misconduct, his hearing testimony showed that he had made few concrete changes for the future. He repeatedly referred to a general ambition to limit the number of his cases, the counties in which he practiced, and the time he spent out of the office. But these goals remain largely aspirational.

{¶ 41} Also weighing against respondent are the aggravating factors that his acts and omissions demonstrate a pattern of misconduct and caused all three clients harm, including putting two at risk of arrest. See BCGD Proc.Reg. 10(B)(1)(c) and (h). Respondent in addition failed to respond during relator's investigations until compelled by subpoena. See BCGD Proc.Reg. 10(B)(1)(e). Finally, the board doubted that respondent, given his evasive answers, fully accepted responsibility for his misconduct. We accept the board's findings as to the evidence of mitigating and aggravating factors.

*Disposition*

{¶ 42} Based on these circumstances and the cited precedent, we find the appropriate sanction to be a two-year suspension from practice with a stay of the last year under conditions designed to help ensure respondent's ethical practice of law in this state. Respondent is therefore suspended from the practice of law in Ohio for two years; however, the last year of the suspension is stayed on the following conditions: (1) respondent shall commit no further misconduct, (2) in addition to the requirements of Gov.Bar R. X, respondent shall complete 12 hours of CLE training in law-office, caseload, and time management, and (3) respondent shall complete one year of monitored probation pursuant to Gov.Bar R. V(9) under the auspices of a lawyer appointed by relator. If respondent fails to comply with the terms of the stay and probation, the stay will be lifted and respondent will serve the full two-year suspension.

**{¶ 43}** Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., dissents.

————————————

**MOYER, C.J., dissenting.**

**{¶ 44}** I respectfully dissent from the majority decision in regard to the sanction imposed on respondent. Respondent agreed to represent several clients in various cases, but failed to do so. He did not promptly reimburse unearned fees; he did not return his client's phone calls. Respondent misled the client in Count II about the progress of the case, concealing his inaction.

**{¶ 45}** Respondent's dishonesty and lack of responsibility exposed his clients to possible arrest, loss of driving privileges, and fines. This lack of responsibility was exacerbated by respondent's failure to adequately participate in the investigation of the complaints detailed in Counts I and II, as well as his unwillingness to admit that he had misled the client in Count II, until he was strongly questioned at his hearing by a panel member.

**{¶ 46}** These serious ethical violations demonstrate a course of conduct of unethical and dishonest behavior, warranting a stricter sanction than the partially stayed suspension ordered by the majority. The majority is correct that a suspension of at least two years is appropriate in this case. See *Disciplinary Counsel v. Manning*, 111 Ohio St.3d 349, 2006-Ohio-5794, 856 N.E.2d 259, ¶ 14. But in my opinion, respondent, like Manning, did not produce mitigating evidence sufficient to warrant leniency, id., and I would not stay the suspension. I would therefore impose a two-year suspension from the practice of law, with no time stayed.

————————————

Strauss & Troy, L.P.A., Franklin A. Klaine Jr., and Diane Schneiderman; Porter Wright Morris & Arthur, L.L.P., and Carolyn A. Taggart; and David C. Wagner, for relator.

John H. Burlew, for respondent.

_____