DISCIPLINARY COUNSEL *v*. JACKSON.

[Cite as *Disciplinary Counsel v. Jackson*,

127 Ohio St.3d 250, 2010-Ohio-5709.]

*Attorneys — Misconduct — Two-year license suspension partially stayed on conditions.*

(No. 2010-0735 — Submitted August 10, 2010 — Decided November 30, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-042.

_____

**Per Curiam**.

{¶ 1} Respondent, Stanley Jackson Jr. of Cleveland, Ohio, Attorney Registration No. 0077011, was admitted to the practice of law in Ohio in 2003. In a three-count amended complaint, relator, Disciplinary Counsel, charged respondent with violations of the Code of Professional Responsibility and the Rules of Professional Conduct arising from his representation of two clients and his conduct in the ensuing disciplinary investigation.[1] A panel of the Board of Commissioners on Grievances and Discipline heard the case, including the testimony of respondent and other witnesses, and considered the parties' stipulations to certain facts and misconduct. Based upon findings that he has committed multiple ethical violations by charging a clearly excessive fee,

_____

1. Relator charged respondent with misconduct pursuant to applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which superseded the Code of Professional Responsibility.

dividing his fees with other lawyers without disclosing the terms of that division, intentionally damaging or prejudicing a client during the course of his representation, and making knowingly false statements of material fact during a disciplinary investigation, the panel recommended that respondent's license to practice law be suspended for two years, with the second year stayed on conditions. Adopting the panel's findings of fact and misconduct, the board nevertheless recommends that we suspend respondent's license for two years with no stay.

{¶ 2} Respondent objects to the board's recommended sanction and urges us to adopt the panel's recommendation that a portion of the suspension be stayed. We accept the board's findings of fact and misconduct. Because we conclude that the appropriate sanction for respondent's misconduct is a two-year suspension with six months stayed on conditions, we sustain respondent's objections.

**Misconduct**

*Count I*

{¶ 3} The stipulations and evidence adduced at the panel hearing demonstrate that in December 2007, respondent received $25,000 to represent a professional rap artist who was charged with carrying a concealed weapon into the Cleveland Hopkins International Airport. Fifteen days after the representation commenced and while the criminal case was still pending, the client terminated respondent's legal services and requested a $22,000 refund. Respondent did not answer several letters he received from the client's representative and did not refund any portion of the fee. Respondent claimed that he had earned the $30,000 flat fee he had quoted the client by (1) making sure the client's bond was not excessive, (2) obtaining the client's release from jail, (3) negotiating with federal authorities to ensure that the client did not face federal prosecution for his actions, and (4) having the matter prosecuted by the city of Cleveland.

**{¶ 4}** The parties stipulated and the panel and board found that respondent's conduct violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from charging or collecting a clearly excessive fee) and 1.16(e) (failing to promptly refund unearned attorney fees). The panel dismissed six other alleged violations, having unanimously concluded that relator failed to satisfy its burden of proving them by clear and convincing evidence. See Gov.Bar R. V (6)(H) (permitting a hearing panel to dismiss a charge or count of misconduct upon a unanimous finding that there is insufficient evidence to support it).

*Count II*

**{¶ 5}** The panel found that in October 2004, a man had hired respondent to recover $55,000 that the Willoughby Hills Police Department had seized from him during a traffic stop the previous month. The man had executed a limited power of attorney authorizing respondent alone to seek the return of the seized money and had also agreed to pay a $750 flat fee plus 30 percent of any funds recovered.

**{¶ 6}** At respondent's request, another attorney, who was not a member of his firm, agreed to serve as co-counsel in exchange for a portion of the attorney fees. The client never received a writing detailing that attorney's participation in his case or explaining respondent's fee agreement with that attorney. Nor did the client consent to the arrangement. When the client advised the additional attorney that he did not want his services, that attorney claimed that he was owed fees of $5,000 and had a lien against any money eventually received by the client in the case.

**{¶ 7}** Respondent filed a notice of appeal in the case after receiving an unfavorable court ruling and consulting with the client. A second attorney, also unaffiliated with respondent's firm, agreed to serve as co-counsel for the appeal in exchange for a portion of the attorney fees. Again, respondent did not advise the

client that this attorney would be serving as lead counsel or disclose the terms of the fee division to him.

{¶ 8} With the appeal pending, and without the client's knowledge or consent, respondent and his co-counsel filed a federal civil rights action on the client's behalf. After the appellate court affirmed the trial court's judgment in the client's first case, respondent settled the related civil rights lawsuit for $2,500 without the client's knowledge and filed a stipulation to dismiss the action with prejudice.

{¶ 9} Respondent received a settlement check payable to himself, the two attorneys who had assisted him in the actions, and the client. He signed the client's name on the back of the check without the client's consent, deposited it into his client trust account, and immediately withdrew $2,500 in cash. Respondent claims to have distributed the entire $2,500 to his former co-counsel in the municipal court case and admits that he did not distribute any of the settlement proceeds to the client or provide him with a closing statement detailing the distribution of those proceeds. He has not complied with the client's requests for his file and asserts that the co-counsel was responsible for maintaining it.

{¶ 10} Based upon these findings, the panel concluded that respondent's conduct violated DR 2-107(A)(2) (requiring a lawyer to disclose to a client in writing the terms of the division of the fee), 1-102(A)(6) and Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), 7-101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging a client during the course of the professional relationship), and 9-102(B)(4) and 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive). The board adopted these findings of misconduct and also found that respondent's conduct violated DR 1-102(A)(4) (prohibiting conduct involving dishonesty,

4

fraud, deceit, or misrepresentation) as charged in the amended complaint.[2] We accept these findings of fact and misconduct.

*Count III*

**{¶ 11}** Consistent with the parties' stipulations, the panel and board found that respondent has made inconsistent statements of material fact throughout this disciplinary proceeding. At his February 12, 2009 deposition, respondent testified that in representing the client in Count I, he "ended up getting to the airport, talking to the FBI, [and] convinced them not to charge [his client]." In contrast, at his October 8, 2009 deposition, respondent testified that he "turned around before [he] actually reached the airport" because "before [he] could get to the airport, they [the FBI] had released [the client] and started taking him to Cleveland."

**{¶ 12}** Respondent also gave conflicting testimony regarding his handling of the settlement check issued in Count Two. He initially testified that one of the attorneys who served as co-counsel had signed the client's name to the check. He later admitted that he had signed the client's name, but claimed that he had "no direct knowledge" as to how or to whom the settlement funds were distributed. Then, in a written response to relator's request for information regarding the distribution of the settlement proceeds, respondent stated that the client had authorized the payment to his former co-counsel, who had asserted a lien on the file. Although he testified that he cashed the settlement check and presented the entire amount to his former co-counsel, that attorney testified that respondent had paid him only $600.

---

2. The board found that the panel had dismissed the alleged violation of DR 1-102(A)(4), yet the board proceeded to find that respondent's conduct violated that rule. The record reveals, however, that the panel dismissed only the alleged violations of DR 1-102(A)(5) and 4-101(B)(1) and Prof.Cond.R. 8.4(c) and that it made no finding with respect to the alleged violation of DR 1-102(A)(4).

**{¶ 13}** The panel and board concluded that respondent's false and inconsistent statements violated Prof.Cond.R. 8.1(a) (prohibiting knowingly making a false statement of material fact in connection with a disciplinary matter) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation). We accept these findings of fact and misconduct.

### Sanction

**{¶ 14}** In recommending a sanction, the panel and board considered the ethical duties that respondent violated, the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."), and the sanctions imposed in similar cases. See, e.g., *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 15}** The panel and board found that respondent's commission of multiple offenses and false and inconsistent statements during the disciplinary process were aggravating factors weighing in favor of a greater sanction. BCGD Proc.Reg. 10(B)(1)(d) and (f). But they also considered respondent's lack of a prior disciplinary record, reported good-faith effort to make restitution to the client in Count I, [3] and eight letters from civic leaders, business people, clients, and family members, as factors in mitigation. BCGD Proc.Reg. 10(B)(2)(a), (c), and (e). Although they did not specifically cite them as mitigating factors, the panel and board also noted respondent's volunteer work and creation of a

---

3. On August 11, 2010, respondent's counsel filed a motion to clarify the record, based upon his belief that his response to questions at oral argument may have given the impression that his client had made no payment toward his $15,000 restitution obligation. Because the record reflects that respondent has made one payment of $1,000 pursuant to his agreement with the affected client, we hereby grant respondent's motion.

scholarship program for underprivileged students at his alma mater, Bowling Green State University. While the panel recommended that respondent be suspended for two years with the second year stayed on the conditions that he pay restitution to the client in Count I and receive education regarding proper law-office management, the board recommended that we impose a two-year suspension with no stay. Respondent objects and argues that *Disciplinary Counsel v. Davis*, 121 Ohio St.3d 84, 2009-Ohio-500, 902 N.E.2d 25; *Cleveland Metro. Bar Assn. v. Kealy*, 125 Ohio St.3d 238, 2010-Ohio-1554, 927 N.E.2d 591; *Cincinnati Bar Assn. v. Larson*, 124 Ohio St.3d 249, 2009-Ohio-6766, 921 N.E.2d 618; and *Cleveland Bar Assn. v. Mishler*, 118 Ohio St.3d 109, 2008-Ohio-1810, 886 N.E.2d 818, and the mitigating factors present in this case weigh in favor of a less exacting sanction.

{¶ 16} In *Davis*, we imposed a sanction of a two-year suspension with 12 months stayed on conditions. Davis had failed to provide notice of a settlement to the client's automobile insurer as required to obtain underinsured-motorist coverage, had made false representations to the client about the status of the case, and had evaded relator's inquiries during the resulting disciplinary investigation. *Davis*, 121 Ohio St.3d 84, 2009-Ohio-500, 902 N.E.2d 25, ¶ 4-11. As aggravating factors, we accepted the board's findings that she had had a dishonest motive, had engaged in a pattern of misconduct involving multiple offenses, and had caused serious harm to the client. Id. at ¶ 16, citing BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (h).

{¶ 17} In mitigation, however, we recognized that Davis was very new to the bar and had had no experience in personal-injury litigation when she accepted the client's case and that she later conceded the gravity of her misconduct. Id. at ¶ 16. Although Davis initially evaded the relator's investigation, she eventually cooperated, and the parties stipulated to her good character and reputation. Id.; BCGD Proc.Reg. 10(B)(2)(d) and (e).

**{¶ 18}** In *Kealy*, we suspended the respondent for 18 months with 12 months stayed on conditions based upon findings that he had neglected an entrusted legal matter, intentionally failed to carry out a contract of employment, intentionally prejudiced or damaged a client, engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, accepted a loan from a client when he and the client had differing interests, and knowingly made false statements of material fact during the resulting disciplinary investigation. *Kealy*, 125 Ohio St.3d 238, 2010-Ohio-1554, 927 N.E.2d 591, ¶ 4, 6, 8, 19.

**{¶ 19}** Aggravating factors in *Kealy* included a pattern of misconduct, a refusal to completely acknowledge the wrongfulness of his conduct, an initial failure to be forthcoming in the resulting disciplinary investigation, and harm to clients. Id. at ¶ 12; BCGD Proc.Reg. 10(B)(1)(c), (e), (g), and (h). In mitigation, however, we found that Kealy had practiced law for 30 years without incident, had performed a "staggering amount" of pro bono work, and had a long history of volunteerism. Id. at ¶ 13; BCGD Proc.Reg. 10(B)(2)(a) and (e).

**{¶ 20}** In *Larson*, we imposed a two-year suspension with one year stayed on conditions, including one year of monitored probation, based upon findings that the attorney had misled a client about the status of her driver's license suspension and other traffic citations, had failed to perform his duties as counsel for that client and two others, had failed to return unearned fees to all three clients, and had failed to cooperate in two of the resulting disciplinary investigations. *Larson*, 124 Ohio St.3d 249, 2009-Ohio-6766, 921 N.E.2d 618, ¶ 2. In mitigation, we adopted the board's findings that the respondent had no prior disciplinary offenses, had presented testimony of three judges attesting to his good character, and had produced medical evidence demonstrating that a medical condition had contributed to his misconduct. Id. at ¶ 20; BCGD Proc.Reg. 10(B)(2)(a) and (e). But in aggravation, we noted that respondent had engaged in a pattern of misconduct that harmed three clients, had failed to respond to the

disciplinary investigation until compelled to do so by subpoena, and had given evasive answers during the disciplinary investigation. Id. at ¶ 41; BCGD Proc.Reg. 10(B)(1)(c), (e), and (h).

{¶ 21} The panel and board cite *Cleveland Bar Assn. v. Mishler*, 118 Ohio St.3d 109, 2008-Ohio-1810, 886 N.E.2d 818, in support of their respective recommendations. In *Mishler*, we imposed a two-year suspension with the last year stayed on conditions where an attorney had accepted a settlement offer without his client's knowledge, had obtained settlement proceeds by forging the client's endorsement, had charged excessive fees, had failed to refund unexpended client funds or provide an accounting, and had failed to obtain a client's consent to have another attorney who was not a member of his firm assist in the representation. Id. at ¶ 15, 23, 26, 47.

{¶ 22} In mitigation, we noted that Mishler did not have a prior disciplinary record, presented evidence of his good character, and made an effort to repay the clients harmed by his misconduct. Id. at ¶ 41; BCGD Proc.Reg. 10(B)(2)(a), (c), and (e). We found, however, that these factors were outweighed by the facts that he had acted out of self-interest, had committed multiple offenses, had engaged in a pattern of misconduct, and either could not or would not explain his actions. Id. at ¶ 41; BCGD Proc.Reg. 10(B)(1)(b), (c), and (d).

{¶ 23} We acknowledge that each of these cases involves some conduct comparable to respondent's misconduct in this case and that each of these cases resulted in a suspension of 18 to 24 months with some portion of that suspension stayed on conditions. We conclude, however, that none of these cases accurately reflect the full spectrum of ethical violations that respondent has been found to have committed.

{¶ 24} Davis, a young attorney like respondent, had intentionally caused damage or prejudice to a client and had engaged in conduct adversely reflecting upon her fitness to practice. But she did not engage in undisclosed fee splitting,

fail to promptly deliver funds that a client was entitled to receive, or charge an illegal or clearly excessive fee. Moreover, while she initially "evaded inquiries during relator's investigation," *Davis*, 121 Ohio St.3d 84, 2009-Ohio-500, 902 N.E.2d 25, at ¶ 11, she later fully disclosed her misconduct, without making false statements or misrepresentations. Id. at ¶ 16.

**{¶ 25}** Like respondent, Kealy's ethical infractions included violations of Gov.Bar R. V(4)(G) and Prof.Cond.R. 8.1(a) for conduct that occurred during his disciplinary investigation. *Kealy*, 125 Ohio St.3d 238, 2010-Ohio-1554, 927 N.E.2d 591, ¶ 5, 12. But while Kealy was "not initially forthcoming in the investigation of his ethical infractions" and made *a* false statement to investigators, *Kealy* at ¶ 5-6 and 12, respondent's multiple false statements have occurred throughout the investigation and panel hearing. Likewise, while Larson initially failed to cooperate in two disciplinary investigations, he later cooperated and ultimately admitted that he had committed multiple violations of the Code of Professional Responsibility and the Rules of Professional Conduct and Gov.Bar R. V(4)(G). *Larson*, 124 Ohio St.3d 249, 2009-Ohio-6766, 921 N.E.2d 618, ¶ 8, 13, 15. And although Mishler "either could not or would not explain his misdeeds," *Mishler*, 118 Ohio St.3d 109, 2008-Ohio-1810, 886 N.E.2d 818, ¶ 41, we made no findings that he either failed to cooperate or made false or misleading statements in his disciplinary investigation.

**{¶ 26}** In this case, although respondent offered limited cooperation in the disciplinary proceedings by stipulating to numerous facts and admitting two of the charged ethical violations, his cooperation is far outweighed by the fact that his misconduct continued throughout the investigation and panel hearing. The record also reflects that he has violated his agreement to repay his client in Count I. Moreover, respondent's character evidence is of limited value in mitigation.

**{¶ 27}** Having weighed respondent's misconduct and having given due consideration to the relevant aggravating and mitigating factors and the sanctions

10

imposed for similar misconduct, we conclude that the appropriate sanction for respondent's misconduct is a two-year suspension of his license to practice law in Ohio, with six months stayed on the conditions that he (1) commit no further acts of misconduct, (2) comply with his written agreement to pay restitution to the client affected by the misconduct in Count I, and (3) serve one year of monitored probation in accordance with Gov.Bar R. V(9)(B) upon his reinstatement to the practice of law. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and respondent will serve the entire two-year suspension. Costs are taxed to respondent.

                                                            Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Philip A. King, Assistant Disciplinary Counsel, for relator.

Alvin E. Mathews Jr. and Richard Koblentz, for respondent.

_____