**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Schiff,* **Slip Opinion No. 2014-Ohio-2573.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2573

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* SCHIFF.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Schiff,* Slip Opinion No. 2014-Ohio-2573.]**

*Attorneys—Misconduct—Failure to obtain client consent for division of fees with attorney who is not in the same firm and for manner in which fees would be divided—Failure to keep client reasonably informed about status of a matter—Two-year suspension, stayed on conditions.*

(No. 2013-1251—Submitted October 9, 2013—Decided June 18, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-071.

_____

**Per Curiam**.

{¶ 1} Respondent, Marvin Hermann Schiff of Cleveland, Ohio, Attorney Registration No. 0000681, was admitted to the practice of law in Ohio in 1984.

{¶ 2} On October 8, 2012, relator, Cleveland Metropolitan Bar Association, filed a ten-count complaint charging Schiff with violations of the

Code of Professional Responsibility and the Rules of Professional Conduct arising from his representation of multiple clients.[1]  The majority of the claims related to significant defects in the contingent-fee contract Schiff used with his clients.  The contract failed to disclose Schiff's division of fees with an attorney who was not a member of Schiff's firm and the manner in which the fees would be divided.  In accordance with BCGD Proc.Reg. 11, the parties submitted a consent-to-discipline agreement containing stipulations of fact and misconduct and a recommendation that Schiff be suspended for 12 months with the entire suspension stayed on the condition that Schiff obtain 12 credit hours of continuing legal education on the subject of law-office management in addition to meeting his obligations under Gov.Bar R. X(3).

{¶ 3}  A panel of the Board of Commissioners on Grievances and Discipline refused to accept the consent-to-discipline agreement and conducted a hearing at which the parties submitted joint stipulations of fact and misconduct, stipulated to aggravating and mitigating factors, and jointly recommended a sanction.  Schiff testified briefly as the sole witness.  The panel adopted the parties' stipulations of fact and misconduct and recommended that Schiff be suspended from the practice of law for 12 months, with the entire suspension stayed on the condition that he complete 12 hours of continuing legal education on the topic of law-firm management.  The board adopted the panel's findings of fact, conclusions of law, and recommendation, and no objections have been filed.

{¶ 4}  Having thoroughly reviewed the record, we adopt the board's findings of fact and all but one of its findings of misconduct and adopt the conclusions of law, but we find that a two-year suspension from the practice of law, stayed on conditions, is the appropriate sanction under these circumstances.

---

[1] Relator charged Schiff with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which superseded the Disciplinary Rules of the Code of Professional Responsibility.

## Misconduct

### *Counts One through Eight*

**{¶ 5}** Schiff opened his own law firm as a solo practitioner in February 2005 and occasionally would refer cases to attorney Bryan Scott Freeman. In July 2010, Schiff contacted the FBI and disciplinary counsel to raise his concerns about Freeman's conduct in handling matters that Schiff had referred to him.[2]

**{¶ 6}** Counts One through Eight of relator's complaint involve contingent-fee contracts that Schiff used with eight different clients in 2005 and 2006 that identified Freeman as an attorney with Schiff's firm who was also retained by the client. These contracts stated:

> I (We), the undersigned client(s) _____, hereby retain and employ SCHIFF LAW OFFICES, L.L.C. (Marvin H. Schiff and Bryan Freeman) and its associated counsel (hereinafter referred to as "my lawyers"), to represent me (us) in my (our) claim for damages and injuries caused by the events of _____, 20\_\_, against any person, firm, or corporation which/who is, or may be liable to me (us).

**{¶ 7}** The contingent-fee contracts failed to disclose that Freeman was not a member of Schiff's firm and did not disclose Schiff's intent to refer the case to an attorney (Freeman) outside of Schiff's law firm. The contracts also did not disclose that the fees would be divided between Schiff and Freeman, nor did they identify how the fees would be divided. Accordingly, in each instance the client

---

[2] We ultimately disbarred Freeman in 2011 for misconduct unrelated to the events at issue in this case. *Cleveland Metro. Bar Assn. v. Freeman*, 128 Ohio St.3d 421, 2011-Ohio-1483, 945 N.E.2d 1034.

was not afforded an opportunity to give written consent to the division of fees between Schiff and Freeman or to the manner in which the fees would be divided.

{¶ 8} This conduct violated DR 2-107(A) (permitting division of fees by lawyers who are not in the same firm only with prior consent of the client and if certain conditions are met), 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 2-102(C) (prohibiting a lawyer from holding himself or herself out as having a partnership with one or more lawyers unless they are in fact partners). The parties stipulated to all these violations regarding Counts One through Eight.

{¶ 9} Count One involves an additional matter regarding Schiff's client Ellis Bradley, with whom Schiff used the same contingent-fee contract noted above. In April 2008, Schiff signed an "Initial Closing Statement," which was not signed by Bradley and which did not specify the division of fees between Schiff and Freeman. Instead, the closing statement listed "The Freeman Law Office, L.L.C./Marvin H. Schiff, Esq." as a single line item. The panel and board found that in addition to the previously noted violations, this conduct violated Prof.Cond.R. 1.5(c)(2) (requiring a lawyer entitled to compensation under a contingent-fee agreement to prepare a closing statement to be signed by the lawyer and the client detailing the calculation of the lawyer's compensation, any costs and expenses deducted from the judgment or settlement, and any division of fees with a lawyer not in the same firm). The parties stipulated to this additional violation regarding Count One.

*Count Nine—The Buchanan Matter*

{¶ 10} Kathryn G. Buchanan signed a contingent-fee contract with Schiff on May 14, 2008. That contract stated that Buchanan was retaining "MARVIN H. SCHIFF." After Schiff's name, the phrase "+ BRYAN FREEMAN" was handwritten on the contract to indicate Freeman as an attorney Buchanan also allegedly retained. The contingent-fee contract did not disclose that the fees

4

would be divided between Schiff and Freeman and did not identify how the fees would be divided. Because Buchanan was not afforded an opportunity to give written consent to the division of fees between Schiff and Freeman nor to the manner in which the fees would be divided, the panel and board found that Schiff violated Prof.Cond.R. 1.5(e) (permitting attorneys who are not in the same firm to divide fees only if the division is reasonable and proportional to the work performed, the client consents to the arrangement in writing after full disclosure, and a written closing statement is prepared and signed by the client and each lawyer). The parties stipulated to this violation.[3]

*Count Ten—The Tam Matter*

{¶ 11} In December 2009, Shiu Yeung Tam hired Schiff to assist him with a housing dispute. Tam paid Schiff a $1,500 advance and attempted later to contact Schiff but was unable to reach him. As of October 2011, Schiff had not contacted Tam for at least a year and a half and had not filed a complaint in court on behalf of Tam. The parties stipulated and the panel and board found that Schiff's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client) and 1.4(a)(3) and (4) (requiring a lawyer to keep the client reasonably informed about the status of a matter and requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client).

**Sanction**

{¶ 12} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the

---

[3] The parties also stipulated and the panel and board found that Schiff violated Prof.Cond.R. 1.4(c)(2), as charged in Count Nine of the complaint. However, Prof.Cond.R. 1.4(c)(2) pertains to a lawyer's duty to inform a client that the lawyer does not maintain professional liability insurance before asking the client to agree to a division of fees. There are no indications in the record that Schiff failed to inform his client that he did not maintain professional liability insurance. Consequently, we do not accept the finding of a violation of Prof.Cond.R. 1.4(c)(2), and we dismiss the charge alleging that violation based on the insufficiency of the evidence.

sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

*Aggravating and Mitigating Factors*

**{¶ 13}** The parties have stipulated as aggravating factors and the panel and board found that Schiff's actions constituted a pattern of misconduct, consisted of multiple offenses committed while representing multiple clients, and involved vulnerable clients who were harmed when they were referred to an attorney without a clear explanation in writing as to the division of responsibility for their matters. *See* BCDG Proc.Reg. 10(B)(1)(c), (d), and (h).

**{¶ 14}** Mitigating factors stipulated by the parties and found by the panel and board include the absence of a prior disciplinary record, the absence of a dishonest or selfish motive, and Schiff's full cooperation in these disciplinary proceedings. *See* BCDG Proc.Reg. 10(B)(2)(a), (b), and (d). Additional mitigating factors that the parties stipulated and the panel and board found are Schiff's reporting Freeman's misconduct to the office of disciplinary counsel and Schiff's revising his contingent-fee contract so that it is now fully compliant with the applicable Rules of Professional Conduct. Finally, the panel and board noted that all the clients from whom Freeman took settlement funds were entirely reimbursed and also noted Schiff's good character and reputation. *See* BCDG Proc.Reg. 10(B)(2)(c) and (e).

**{¶ 15}** The panel and board recommend a 12-month suspension from the practice of law, with the entire suspension stayed on the condition that Schiff obtain 12 credit hours of continuing legal education on the subject of law-office management.

*Applicable Precedent*

**{¶ 16}** The board cites three cases in support of its recommended sanction. In *Disciplinary Counsel v. Conese*, 102 Ohio St.3d 439, 2004-Ohio-3888, 812 N.E.2d 944, the lawyer committed a misdemeanor, used letterhead suggesting that he and another lawyer were partners when they had no professional affiliation, failed to obtain a client's written consent for a fee-sharing arrangement with an attorney from another firm, and failed to segregate client funds. *Id*. at ¶ 2-7. We suspended Conese from the practice of law for a period of two years and stayed his suspension on conditions, based on mitigating factors that included his admissions of misconduct, his cooperation in the disciplinary proceedings, his contrition, and his remedial efforts. *Id*. at ¶ 16.

**{¶ 17}** In *Toledo Bar Assn. v. Johnson*, 121 Ohio St.3d 226, 2009-Ohio-777, 903 N.E.2d 306, the lawyer shared fees with a lawyer outside his firm without notice to his clients, charged clearly excessive fees, refused to refund money to a client, and deposited an unearned fee directly into his law-office operating account rather than into a client trust account before completing the work. *Id*. at ¶ 3-8. We suspended him from the practice of law for six months, but because he had made restitution, we stayed the suspension on conditions. *Id*. at ¶ 11.

**{¶ 18}** In *Disciplinary Counsel v. Jackson*, 127 Ohio St.3d 250, 2010-Ohio-5709, 938 N.E.2d 1021, the lawyer charged a clearly excessive fee, divided his fees with other lawyers without disclosing the terms of that division, intentionally damaged or prejudiced his client during the course of his representation, and made a knowingly false statement of material fact during the disciplinary investigation. *Id*. at ¶ 1.

**{¶ 19}** Factors identified as aggravating were that Jackson committed multiple offenses and made false and inconsistent statements during the disciplinary process. *Id*. at ¶ 15. The noted mitigating factors were his lack of a

prior disciplinary record, his reported good-faith effort to make restitution to one client, and the submitted evidence of his good character. *Id.* After reviewing cases involving similar misconduct, we imposed a two-year suspension, with six months stayed on conditions. *Id.* at ¶ 27.

{¶ 20} We consider Schiff's misconduct to be most analogous to that at issue in *Disciplinary Counsel v. Conese*. Both Conese and Schiff engaged in conduct suggesting a professional affiliation when none existed and both failed to obtain their clients' written consent for a fee-sharing arrangement with an attorney from another firm. Although Schiff did not commit a misdemeanor or fail to segregate client funds, he did fail to communicate reasonably with a client and failed to have a client sign a closing statement that disclosed the division of his fees with a lawyer not in the same firm.

{¶ 21} Accordingly, Marvin Hermann Schiff is suspended from the practice of law in Ohio for two years, with the entire suspension stayed on the conditions that he commit no further misconduct and that he complete 12 hours of continuing legal education on the topic of law-firm management within two years of the date of this order. If Schiff fails to comply with the conditions of the stay, the stay shall be lifted, and Schiff shall serve the entire two-year suspension. Costs are taxed to Schiff.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'DONNELL and O'NEILL, JJ., dissent and would adopt the recommendation of the panel and the board and impose a one-year suspension, stayed, with condition.

_____

Heather M. Zirke, Bar Counsel; and Tucker Ellis, L.L.P., Benjamin E. Sassé, and Jonathan F. Feczko, for relator.

Reminger Co., L.P.A., and Clifford C. Masch, for respondent.

_____