[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Cannata and Phillips,* Slip Opinion No. 2016-Ohio-3027.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3027

DISCIPLINARY COUNSEL *v.* CANNATA.

DISCIPLINARY COUNSEL *v.* PHILLIPS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Cannata and Phillips,* Slip Opinion No. 2016-Ohio-3027.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including conflict-of-interest violations—Conditionally stayed six-month suspension.*

(No. 2015-1316—Submitted December 2, 2015—Decided May 18, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-091.

_____

**Per Curiam.**

{¶ 1} Respondent Sam Patrick Cannata of Cleveland, Ohio, Attorney Registration No. 0078621, was admitted to the practice of law in Ohio in 2005.

Respondent Gerald Wayne Phillips of Avon Lake, Ohio, Attorney Registration No. 0024804, was admitted to the practice of law in Ohio in 1977.

{¶ 2} In December 2014, a probable-cause panel of the Board of Commissioners on Grievances and Discipline certified to the full board two separate three-count complaints filed by relator, disciplinary counsel, against Cannata and Phillips. Relator alleged that a co-counsel arrangement between Cannata and Phillips, which included the representation of limited-liability companies in which Cannata was a member, created conflicts of interest and falsely created the impression that the two attorneys were practicing law in a partnership, in violation of the Rules of Professional Conduct.

{¶ 3} In January 2015, the chairperson of the board, now known as the Board of Professional Conduct, *see* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII, consolidated the cases against Cannata and Phillips for a hearing. The panel appointed to hear the matter unanimously rejected the parties' timely consent-to-discipline agreements in order to obtain clarification of certain issues at a final hearing.

{¶ 4} Before the hearing, the parties submitted stipulations of fact, misconduct, and mitigation that mirrored their consent-to-discipline agreements, and relator agreed to dismiss several alleged violations with respect to each respondent. The parties recommended that Cannata and Phillips be suspended from the practice of law for six months, all stayed on the condition that they engage in no further misconduct.

{¶ 5} After hearing testimony from Cannata and Phillips, the panel issued a report that largely adopted the parties' stipulations and their recommended sanction. The board adopted the panel report in its entirety. Although Phillips initially objected to the board's findings of fact and recommended sanction, he ultimately withdrew those objections.

**{¶ 6}** We adopt the board's findings and recommendation and suspend Cannata and Phillips from the practice of law in Ohio for six months, with the entire suspension stayed on the condition that they engage in no further misconduct.

## Misconduct

### Count One

Creating False Impression that Attorneys Are Practicing as a Law Firm

**{¶ 7}** After graduating from the United States Air Force Academy, serving on active duty in the Air Force, and obtaining a master's degree in business administration from Rensselaer Polytechnic Institute, Cannata returned to Cleveland in 1993 and started a construction business. He branched out into housing and commercial real-estate development before he attended and graduated from the Cleveland Marshall College of Law in 2002. He continued his business career after completing law school and devoted only 20 to 30 percent of his professional time to his solo legal practice. Because of his business contacts, Cannata was able to attract legal business that required more legal experience and expertise than he possessed, so he began to refer certain matters to Phillips, a more experienced lawyer, and worked with him as co-counsel.

**{¶ 8}** In 2009, Cannata and Phillips entered into a written co-counsel agreement that established how they would divide their fees on their co-counsel cases, provided that they would maintain their separate practices of law in their separate offices, and stated that nothing about the co-counsel relationship would "establish * * * any other relationship, including without limitation a partnership, a professional association, or a law firm." At the same time, they filed articles of organization for a limited-liability company called Cannata Phillips, L.P.A., L.L.C., in which they represented that they were a law firm, and Cannata created a website for the company that appeared to represent that he and Phillips were members of a law firm. Phillips testified that they did not intend to operate as a law firm and that he intended for the filing to provide public notice that he would not be bound by

Cannata's other liabilities. From 2009 through 2011, Cannata and Phillips shared approximately $140,000 in legal fees.

{¶ 9} Consistent with the parties' stipulations, the board found that by forming Cannata Phillips, L.P.A., L.L.C., Cannata and Phillips created the appearance that they were practicing in a partnership or firm when that was not their intention and that they therefore violated Prof.Cond.R. 7.5(d) (permitting lawyers to state or imply that they practice in a partnership or other organization only when that is the fact).

{¶ 10} But because the evidence did not demonstrate an intention to create a partnership or firm within the meaning of Prof.Cond.R. 1.10(a), the board adopted the parties' recommendation that we dismiss alleged violations of that rule, imputing a lawyer's conflicts of interest to all members of the lawyer's law firm, with respect to both respondents in accordance with their stipulations. *See* Prof.Cond.R. 1.10, Comment [1] (stating that whether two or more lawyers constitute a firm can depend on the specific facts).

Conflicts of Interest in an Eviction Proceeding

{¶ 11} Cannata formed several real-estate- and property-management companies with David Snider in the mid-1990s. Those companies owned and operated several properties in Northeast Ohio. Snider also owned various businesses in whole or in part, and Phillips rendered legal services for some of those entities.

{¶ 12} A significant downturn in the real-estate market in 2008 had a negative effect on the businesses owned by Cannata, Snider, and their spouses. A dispute arose in their business relationship that reached an impasse in 2012, and the conduct of Cannata and Phillips during that impasse is at the heart of this disciplinary case.

{¶ 13} Vista Way Partners, L.P.A., was a limited-liability company that in 2012 was equally but indirectly owned by the wives of Cannata and Snider.

Various Cannata/Snider businesses, including Snider Cannata Property Management, L.L.C. ("SCPM"), in which Cannata and Snider each owned a 50 percent interest, housed their headquarters in property they rented from Vista Way. In July 2012, Snider unilaterally locked Cannata out of the premises, removed the company computer server and records from the premises, and allegedly withdrew approximately $160,000 from various company bank accounts—all without Cannata's consent. And because SCPM had not paid rent to Vista Way for 43 months, Cannata, acting as the co-manager of Vista Way, sought to evict SCPM from the premises in order to rent the premises to a paying tenant. At Cannata's request, Phillips filed a complaint on behalf of Vista Way against SCPM in the Cuyahoga County Court of Common Pleas on July 13, 2012.

{¶ 14} Simultaneously with the filing of the complaint alleging breach of the lease agreement and seeking to evict SCPM from the premises, Cannata filed a waiver of service in which he acknowledged that SCPM had already received a copy of the complaint. And four minutes after the complaint was filed, he filed an answer admitting that SCPM had breached the lease but denying other allegations. Cannata and Phillips submitted a stipulated judgment entry of eviction to the court, but the judge never signed it. Snider and Cannata ultimately reached an agreement concerning the leased premises, and the eviction proceeding was dismissed just five days after it was filed.

{¶ 15} At the panel hearing, Cannata and Phillips acknowledged that although the SCPM operating agreement provided that the members had "equal rights in the management of the business," they acted without the consent of Snider or his wife. In retrospect, they conceded that the Sniders' consent was required. The board found that Cannata's actions in unilaterally filing an answer and stipulated judgment entry on behalf of a business entity that was jointly owned by his wife and Snider's wife (and that he co-managed) against the business he jointly owned with Snider clearly conflicted with his fiduciary duty to the Sniders. The

board also found that Phillips's co-counseling and mentoring relationship with Cannata materially limited his objectivity toward the Sniders, who owned 50 percent of each of the litigants in the eviction proceeding. Therefore, the board found that Cannata and Phillips violated Prof.Cond.R. 1.7(a)(2) (providing that a lawyer's continued representation of a client creates a conflict of interest if there is a substantial risk that the lawyer's ability to represent the client will be materially limited by the lawyer's responsibilities to another client, former client, or third person or by the lawyer's own personal interests).

**{¶ 16}** Based on the insufficiency of the evidence, however, the board recommends that we dismiss alleged violations of Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) with respect to both respondents and Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) with respect to Cannata.

**{¶ 17}** We adopt the board's findings of fact and agree that Cannata and Phillips violated Prof.Cond.R. 1.7(a)(2) and 7.5(d). We also dismiss the alleged violations of Prof.Cond.R. 1.10(a) and 8.4(d) with respect to both respondents and 8.4(h) with respect to Cannata.

*Count Two*

**{¶ 18}** In their stipulations, the parties agreed to dismiss the alleged violations in Count Two of the complaints against Cannata and Phillips and presented no evidence or argument regarding these allegations. We therefore dismiss Count Two with respect to both respondents.

*Count Three: Conflicts of Interest in a Dissolution Matter*

**{¶ 19}** Relator alleged that both Phillips and Cannata had conflicts of interest arising from their legal representation of various entities in the dissolution of Bridgeview Center South, L.L.C. ("BCS"), an Ohio limited-liability company owned by Snider Interests, L.L.C., and Cannata-Infinity, L.L.C. Phillips's conflict

arose from his representation of Snider Interests, L.L.C., in a foreclosure case and his representation of the party opposing Snider Interests, L.L.C., in the BCS dissolution matter. Cannata's conflict arose when, after being disqualified as counsel in the BCS dissolution, he violated a court order—that he represent no party other than himself in that action—when he filed pleadings not only on behalf of himself but also on behalf of Cannata-Infinity, L.L.C.

{¶ 20} In March 2009, Cannata and Snider retained Phillips to represent 96th Street Development, L.L.C. ("96th Street"), a company in which they both had ownership interests, in connection with an anticipated foreclosure filing against the company by Bank of America. As part of that representation, Phillips was to prepare certain mortgages for money that 96th Street owed on intercompany accounts to other related entities, including Snider Interests, L.L.C., which was owned by the Sniders. Phillips prepared and recorded the mortgages, defended 96th Street in the foreclosure action, and filed cross-claims asserting the mortgage-security interests of the mortgages he had recorded.

{¶ 21} In 2010, the mortgage obligations based on the intercompany accounts were either written off as capital contributions or fully satisfied. Phillips, however, remained as counsel of record for 96th Street and the cross-claimants (including Snider Interests, L.L.C.) until late 2012.

{¶ 22} On June 27, 2012, Phillips filed a complaint on behalf of Cannata-Infinity, L.L.C., seeking to dissolve BCS on the ground of management deadlock. Phillips was required by statute to name Snider Interests, L.L.C., as a defendant in the action because it had an ownership interest in BCS. But at that time, Phillips was still counsel of record in the 96th Street foreclosure action for (1) 96th Street (partially owned by Snider), (2) cross-claimant BCS, and (3) cross-claimant Snider Interests, L.L.C. Phillips admitted that his simultaneous representation of Snider Interests, L.L.C., in the 96th Street foreclosure, and his filing against Snider Interests, L.L.C., in the BCS dissolution action created a conflict. At the panel

hearing, he testified that at the time he filed the complaint to dissolve BCS, he thought that his representation of Snider Interests, L.L.C., in the 96th Street litigation was a limited engagement that did not include the receipt of any confidential information. He also explained that he considered his representation in the BCS dissolution to be nonadversarial because all parties were in agreement that there was a management deadlock that necessitated statutory dissolution.

{¶ 23} The board found that relator had proven by clear and convincing evidence that Phillips's conduct in this matter violated Prof.Cond.R. 1.7(a)(2). But it recommended that we adopt the parties' stipulation to dismiss an alleged violation of Prof.Cond.R. 1.7(a)(1) (prohibiting a lawyer's continued representation of a client if the representation of that client will be directly adverse to another client), because even though Phillips remained counsel of record for Snider Interests, L.L.C., the company's mortgage interest had been written off and charged as a capital contribution. Thus, Phillips's representation was effectively terminated before Phillips filed the BCS corporate dissolution.

{¶ 24} Less than two weeks after Cannata and Phillips filed the complaint on behalf of Cannata-Infinity, L.L.C., to dissolve BCS, the Sniders filed a statutory-dissolution proceeding to dissolve various Cannata/Snider business entities including BCS, Vista Way, and SCPM on the basis of the management deadlock. Shortly thereafter, the court consolidated the two dissolution proceedings and ordered the appointment of a receiver for BCS to wind up the affairs of the company.

{¶ 25} On October 3, 2012, the court granted a motion of Snider Interests, L.L.C., to disqualify Cannata and Phillips as counsel and issued an order stating, "The Court finds the motion to disqualify counsel to be well taken and it is hereby granted. Gerald Phillips and Sam Cannata are disqualified as counsel and shall not represent any party in the above-captioned consolidated matters. (Sam Cannata is a party to the case and is permitted to represent himself pro se.)" But Cannata

continued filing pleadings on behalf of himself or Cannata-Infinity, L.L.C., after the court issued that order.

**{¶ 26}** Cannata stipulated that he believed his filings were germane to his role as a party or were intended to represent his individual membership in Cannata-Infinity, L.L.C., pro se. He did not regard this conduct as being inconsistent with or otherwise in violation of the court's order until he received a show-cause motion, at which time he ceased filing documents on behalf of Cannata-Infinity, L.L.C. Cannata stipulated and the board found that he violated Prof.Cond.R. 1.7(c)(1) (prohibiting a lawyer from accepting or continuing a representation if a conflict of interest is created, even with client consent, if the representation is prohibited by law) by continuing to represent Cannata-Infinity, L.L.C., after the court had disqualified him from representing any party other than himself. Relator and Cannata stipulated to the dismissal of an alleged violation of Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), and the board recommends that we adopt their stipulation, because Cannata did not knowingly violate the court's order.

**{¶ 27}** We adopt the board's findings of fact with respect to Count Three of relator's complaints and find that Phillips violated Prof.Cond.R. 1.7(a)(2) and Cannata violated Prof.Cond.R. 1.7(c)(1). We also dismiss the alleged violation of Prof.Cond.R. 1.7(a)(1) with respect to Phillips and Prof.Cond.R. 3.4(c) with respect to Cannata.

### Sanction

**{¶ 28}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Gov.Bar R. V(13). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251,

875 N.E.2d 935, ¶ 21. Although the board consolidated these matters for hearing, it considered these factors separately for each respondent. To the extent that those factors are the same, however, we address them together.

{¶ 29} The only aggravating factor the board found was that both Cannata and Phillips committed multiple ethical violations. *See* Gov.Bar R. V(13)(B)(4). As for mitigating factors, the parties stipulated and the board found that Cannata and Phillips have no prior disciplinary record, made full and free disclosure to the disciplinary board and exhibited a cooperative attitude toward the proceedings, and submitted evidence of their good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). Additionally, the board found that Cannata and Phillips did not act with a dishonest motive and that they have acknowledged the wrongful nature of their misconduct. *See* Gov.Bar R. V(13)(C)(2).

{¶ 30} The board considered a number of cases in which we sanctioned attorneys for similar rule violations. It found numerous cases in which we publicly reprimanded attorneys whose only misconduct consisted of engaging in legal representation in which the attorneys had a conflict of interest. *See, e.g.*, *Ohio State Bar Assn. v. Wick*, 116 Ohio St.3d 193, 2007-Ohio-6042, 877 N.E.2d 660; *Mahoning Cty. Bar Assn. v. Reid*, 102 Ohio St.3d 402, 2004-Ohio-3121, 811 N.E.2d 542.

{¶ 31} In other cases, we have imposed fully stayed suspensions for conflict-of-interest violations. *See, e.g.*, *Disciplinary Counsel v. Dettinger*, 121 Ohio St.3d 400, 2009-Ohio-1429, 904 N.E.2d 890 (imposing a stayed six-month suspension on an attorney who accepted a loan from a client without disclosing the attendant risks of their conflicting interests); *Disciplinary Counsel v. McNamee*, 119 Ohio St.3d 269, 2008-Ohio-3883, 893 N.E.2d 490 (adopting a consent-to-discipline agreement and imposing a stayed one-year suspension on an attorney who represented multiple parties to a business venture in which he also had a significant financial interest, failed to make proper disclosures to his clients, and

continued his representation when the alliance had begun to unravel and it became likely that he would be called as a witness).

**{¶ 32}** We have also imposed fully stayed suspensions on attorneys who have falsely stated or implied that they practice in a partnership, in conjunction with other ethical violations. *See, e.g.*, *Disciplinary Counsel v. Henderson*, 95 Ohio St.3d 129, 2002-Ohio-1756, 766 N.E.2d 590 (imposing a stayed six-month suspension on an attorney who used letterhead that falsely implied that he and another attorney with whom he shared office space were partners and made false statements to a bankruptcy court regarding the compensation he had received from a bankruptcy client); *Disciplinary Counsel v. Conese*, 102 Ohio St.3d 439, 2004-Ohio-3888, 812 N.E.2d 944 (imposing a stayed two-year suspension on an attorney who failed to obtain client consent to an attorney-fee-sharing arrangement and used letterhead that falsely suggested that he and his brother practiced as a partnership); *Cleveland Metro. Bar Assn. v. Schiff*, 139 Ohio St.3d 456, 2014-Ohio-2573, 12 N.E.3d 1207 (imposing a stayed two-year suspension on an attorney who neglected a client matter, failed to keep the client reasonably informed about the status of the matter, used a fee contract that falsely implied that his co-counsel was a member of his law firm, and failed to disclose the manner in which his fees would be divided).

**{¶ 33}** The parties in this case recommended that Cannata and Phillips be suspended from the practice of law for six months, all stayed on the condition that they engage in no further misconduct. Although the board believed that a public reprimand may have been the appropriate sanction for any of the individual rule violations, it concluded that the cumulative effect of multiple violations weighed in favor of a fully stayed suspension. Noting that the mitigating factors outweighed the aggravating factor and that neither respondent was likely to commit further misconduct, the board adopted the parties' recommended sanction.

**{¶ 34}** Having considered the conduct at issue, the applicable aggravating and mitigating factors, and the sanctions imposed for comparable misconduct, we

agree that a six-month suspension, fully stayed on the condition that Cannata and Phillips engage in no further misconduct, is the appropriate sanction in this case.

{¶ 35} Accordingly, Sam Patrick Cannata and Gerald Wayne Phillips are suspended from the practice of law for six months, all stayed on the condition that they engage in no further misconduct. If either Cannata or Phillips engages in further misconduct, the stay of his suspension will be lifted and he will serve the full six-month suspension. Costs of these proceedings are assessed jointly and severally against Cannata and Phillips.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, L.P.A., George D. Jonson, and Kimberly Vanover Riley, for respondent Sam Patrick Cannata.

Gerald W. Phillips, pro se.

_____